IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA (SACRAMENTO)

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, | Case No. 2:25-CV-00078-WBS-CSK |
| Plaintiff, | |
| v. | |
| SWEETENER PRODUCTS, INC., | |
| Defendant. | Tuesday, May 5, 2026 10:13 A.M. |

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE CHI SOO KIM
UNITED STATES MAGISTRATE COURT JUDGE

APPEARANCES:

For the Plaintiff: Central Valley Eden Environmental Defenders,LLC
BY: ADAM BRUMM, ESQUIRE
1520 East Covell Boulevard
Suite B5-611
Davis, California 95616

For the Defendant: Law Office of Jennifer F. Novak
BY: JENNIFER FAYE NOVAK, ESQUIRE
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275

Electronic Court Recording Operator: Janelle Murphy
Robert T. Matsui United States Courthouse
501 I Street
Sacramento, California 95814

Transcription Service: Liberty Transcripts
9107 Topridge Drive
Austin, Texas 78750
(847) 848-4907
DBPATEL1180@GMAIL.COM

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

(Proceedings commenced at 10:13 a.m.)

THE CLERK: Calling Civil Case 25-CV-00078, Central Valley Eden Environmental Defenders, LLC versus Sweetener Products, Inc. Your Honor, this matter is on for Plaintiff's motion to compel and motion for protective order along with Defendant's motion to compel.

THE COURT: Good morning.

MS. NOVAK: Good morning, Your Honor.

THE COURT: You may be seated. Appearances.

MR. BRUMM: Thank you, Your Honor. Adam Brumm, B-R-U-M-M, for the Plaintiff, Central Valley Eden Environmental Defenders.

THE COURT: Good morning.

MS. NOVAK: Good morning, Your Honor. Jennifer Novak for the Defendant.

THE COURT: Good morning.

All right. So we are here for Defendant's motion to compel the 30(b)(6) depo and then Plaintiff's corresponding motion for a protective order. So I've got specific questions for the parties, and then I've reviewed everything that was submitted and then I will also give both sides the opportunity to present any additional argument that you would like.

I will note that I have reviewed everything, so generally any additional argument you do present, I'd request that it's not a repeat of what's in the briefs. But totally

fine if you want to summarize.

So the first thing I wanted to check in on because this case has been around for a little bit is last fall, the parties were working towards settlement. You had a settlement conference. The case was stayed. And it looked like from the docket, and again, the way we do settlement conferences and that type of work in our district is the assigned judges typically don't it. And so I don't know anything that happened. I didn't discuss it with the settlement judge. We don't do that. We keep the lines very clear so that the communications really can be confidential and the parties can be completely candid in those discussions.

So I don't know anything that happened. But from looking at the docket, it looked like the parties were about to settle but then something happened. So without revealing anything that you can't reveal, I just wanted to check in with the parties to see do the parties think you can get back on track towards resolving the case because, as always, whenever parties can resolve cases on their own rather than letting a judge or jury decide it tends to be better.

So I just wanted to check in on that. So let me hear first from Plaintiff.

MR. BRUMM: Sure, thank you, Your Honor. The answer is, yes, I would like to see the case resolved. Previously -- I apologize that I don't remember the date, but it would be

very recently that one of our settlement attorneys, Mr. Craig Brandt, had reached out to Ms. Novak's office to ask if this settlement discussion could start again. I'm sure the Defense can speak to their opinion of that, but that's what I would have to report to the Court this morning, is that we did reach out for further settlement.

We're not able thus far to start that further settlement. I would like to start that further settlement. I'll allow the Defense to speak on that.

THE COURT: Okay.

MS. NOVAK: Thank you. And just to maybe give a little bit of background, one of the reasons why there was such a long stay was really because of scheduling. So it's not as if the parties were on the cusp of settling. It's just it took us until January to even get the conference with Judge Delaney. And even after that, which was a very short attempt, we did try to informally discuss it, and we're not making progress, which is why we requested that the stay be lifted.

Our position has always been that we are willing to entertain settlement, but as the Court is probably aware, in these types of cases, there are two components. The first is some sort of injunctive relief to address alleged violations of the Clean Water Act. And then the second is if the Plaintiff in those cases believes it should be entitled to recover attorney's fees. And truthfully, I don't even know how far

away we would be in resolving that.

So again, Mr. Brumm is correct. Mr. Brandt did reach out to us. I said we would definitely consider settlement offers. I also knew that we've been so delayed in this case that we also need to be mindful of the fact that we need discovery. So I think we can try to walk and chew gum at the same time.

THE COURT: Okay. So if the parties are interested in having the assistance of the Court, and parties can resolve things on their own. You don't need a mediator or a settlement judge. But if you would like to have a further settlement conference, if you want to give it a try with a different judge, that's totally fine, too. You can reach out to my courtroom deputy and we can help get that scheduled for you all.

I do want to note in environmental cases and other cases like this where there's an injunctive component, it's not unusual to resolve the injunctive piece and then let the attorney's fees piece go to the Court because if it's not resolved, courts are regular -- we are very familiar with dealing with attorney's fees. It comes up all the time.

So I would also encourage the parties, if it sounds like both sides are interested in resolving, maybe you think, and I don't want to say it's creative to think of this, but just non-traditionally, maybe you look at can the parties reach

agreement on just the injunctive piece? And then if that can be resolved, then the motion for attorney's fees gets filed and here I believe it's Judge Shubb, Judge Shubb would decide that motion. So there are other ways to try to look into resolution. So I would just encourage the parties to do that.

Okay.

MR. BRUMM: May I ask a question --

THE COURT: Sure, go ahead.

MR. BRUMM: -- about that, Your Honor, is that I don't know what was told to the Defense by our mediator in the previous session, but what I was informed of --

THE COURT: Oh, so one quick thing I want to note is depending on what you're about to say, it may be okay to say in Court on the record or it may not be, so I just want to just do a quick check-in.

MR. BRUMM: I think that --

THE COURT: Think it's okay?

MR. BRUMM: Yeah.

THE COURT: Okay, go ahead, please.

MR. BRUMM: It would be fine because it's procedural in nature is that what I was informed of is that if the parties would like to come back for further court-assisted settlement is that there needed to be some progress on the injunctive relief before the Court would have us back again.

So that was to my recollection of it getting into the

stay and having it be as long as it was is that I was in fact told that is that I would like to come back. It's just that I don't know that what's been achieved thus far is going to be sufficient for that previous admonishment.

So my question for your Court, Your Honor, is whether your Court would entertain that same request all over again and perhaps send it to a different settlement and magistrate, which was suggested also, but again, it came with that preface to it.

THE COURT: Right, right. So I will say that is pretty common. So for example, just my days are in, just last week I had a further settlement conference settled the case. It was the second one. And I think for all of us, if we've had one settlement conference before we have the next one, we want there to be progress.

MR. BRUMM: Sure.

THE COURT: So I think that's a very common statement. I think it's up to the parties. So if the parties want to have a further settlement conference with the same magistrate judge who was previously assigned, then you should do what that person said to make further progress. And regardless, making further progress is good.

If you want to give it another shot and request a referral to a different judge, that's totally fine, too. None of us have any -- none of us mind that at all, just so you know. So you won't make anyone feel bad and you don't need to

worry at all about that. That is not uncommon.

And I regularly tell people too, parties, if you want to have another settlement conference, more than okay if you want to try it with someone else. Because sometimes, you know, different day, different chemistry, things can work differently. So that's no problem at all. So I leave that to the parties to figure out how you would like to do that.

If it's a further settlement conference with the same magistrate judge, then you can reach out directly to their courtroom deputy. You can also reach out to mine. We're happy to help with that. If the parties think it would be helpful to request another settlement conference judge, then for that one it would make sense to reach out to my courtroom deputy. So I'll let the parties decide what you think would be best.

MR. BRUMM: Thank you, Your Honor.

THE COURT: Okay, I want to go to, before we get into the substance, I want to go to filing issues we've had in the case. So there have been, even before this current motion, just a number of different motions that were filed. I get it that, you know, you practice in lots of different courts and all courts do things differently. But I really want to make sure that the parties follow the local rules and my standing orders, Judge Shubb's orders, all of that in going forward because the docket is a little bit of a mess.

And I say this because I know there are other

discovery motions coming, right? There have already been notices of motions filed for multiple other motions. I've actually lost track of how many of them. So going forward for future discovery motions, I'm only going to permit one set of exhibits.

So for example, here, after the joint statement was filed, two different declarations were filed, but the second declaration from the Defense included some of the same exhibits. That makes the record confusing. And I basically went through, looked at both to see if something was different, if they were the same documents or not. And it is much better for the parties if you have the same set of exhibits. It is much easier for the Court, as well. It makes it more confusing.

So only one set of exhibits will be permitted. The statement is a joint statement anyways. The parties don't have to agree how the exhibits are interpreted, but you should be able to agree on what the universe of exhibits are. So if there are future exhibits with future discovery motions, you need to make sure it's one set of exhibits. This usually does not happen where there are two sets of exhibits. It's very unusual.

For joint statements and discovery disputes in our district, almost always, if there are any exhibits, the parties just submit one set. Okay, so that's the first thing.

MR. BRUMM: May I ask a question, Your Honor?

THE COURT: Yes.

MR. BRUMM: Is the Court going to issue a minute order on --

THE COURT: Yes.

MR. BRUMM: It is, okay, thank you so much.

THE COURT: Yes. Yeah. Yeah, so it's okay if you don't get all of this down. There will be a written order that comes out with this.

MR. BRUMM: Thank you.

THE COURT: All right. And then for the joint statement, so this is not just you all here, the parties here. This is not an uncommon issue, much to my disappointment and my colleagues' disappointment, where there is disagreement about how to prepare the joint statement and providing portions.

The whole purpose of a joint statement is to have one document rather than the typical staggered motion filing of the move-ins motion, then the opposition and the reply. In that situation, you are not giving the other side any advance notice of your filing.

In a joint statement, not just for this, but other joint statements, you have to do that. The whole purpose of the joint statement is not only to do that, but also to give the other side an opportunity to respond to your arguments. So again, there's just one joint statement. There's not

oppositions and replies.

Here, in Defendant statement portion, it appeared that Plaintiff did not provide its portion. Now, I don't want to get into the background and the timing of when things were provided. I'm not taking sides. What I will say is going forward, the parties need to provide their portions of the joint statement before the deadline.

And when I say before, please don't come back and say, because I've had this in a different case, I'm not making it up, where one side provided it one hour before the deadline. The parties missed the deadline and I rejected the filing. You also can't do that. Before doesn't mean right before, and the other side doesn't get a chance to review it.

I'm not going to set a firm deadline on that. I expect counsel to work together on that to agree on simultaneous exchange. You review each other's sides, or maybe if it's a movant, maybe one side provides it first, the other side provides theirs. You get a chance, and then in the end, you have a joint statement where each side has responded to the other side's arguments.

So I'm not going to set deadlines on when to exchange your portions, but you need to coordinate in a way such that the joint statement is really a joint statement. So you're going to see, I have some questions where I don't have a response from the other side to the arguments raised in the

brief. That shouldn't happen in a joint statement. You should be responding to each other's arguments because you've actually seen them before you file the joint statement.

Okay, yes, Mr. Brumm?

MR. BRUMM: May I? Just a, I guess, a suggestion for the Court. Would it be possible for the parties to stipulate as to the period of time here before the Court --

THE COURT: Yes.

MR. BRUMM: -- that could be included in a minute order? I mean, 72 hours, 96 hours, or what have you, Ms. Novak, 3 days?

MS. NOVAK: Right. I think we can work out a schedule. I think one problem is when we're talking about 15 pages of argument, or 10 pages from the other side, we just want to be sure that we are getting at least a couple of days to be able to respond to that. And again, a couple days is better than no days.

We can agree as far as how far in advance we need to be filing or simultaneously exchanging. I think it's a little difficult just to do on the fly right now, but I would say maybe giving at least three days.

MR. BRUMM: I mean, I would be willing to stipulate the three days for the purpose of allowing the Court to set a minute order that would give the parties something to follow.

THE COURT: Okay, sure, so I'm happy to do that. So

how about I'll say at minimum three days before. I will note that already on the docket there are multiple notices of motions, and you've set dates that are quite far out. So this is also different than a situation where the parties are rushing, they've got a deadline coming up, and maybe they can't do three days because they're really squeezed for time.

Here, it doesn't appear that you all are squeezed for time because you've already filed these notices of motion for months in advance. So I will note then at least three days in advance of the deadline. And then if the parties want to work out something else, you can, but that will be at least the minimum.

All right. I want to turn to citations from Plaintiff in the joint statement. So there were a number of citations to cases where I can't find the citation, and it's because for various cases, Plaintiff provided just the case number and a date, and that makes it really hard for the Court to actually locate the case. So you'll either need to provide the Westlaw or Lexis citation for the specific decision you're looking for, or attach a copy of the decisions.

And that's the typical practice. If it's not something that's easily accessible. And right now with the number of different cases cited, for the Court to find them, I would have to separately log into every one of those districts and then attempt to review the docket and use the date. And if

there is more than one order with that date or the date is different, I can't find it. So I tried and then I gave up.

MR. BRUMM: Okay.

THE COURT: Which was a very frustrating exercise for me --

MR. BRUMM: Okay.

THE COURT: -- also because it shouldn't be that much work for me to find the cases you're citing.

MR. BRUMM: Okay, all right.

THE COURT: So that will apply for the future. But for this case, because I have not decided the issues, I know judges, we often come into these hearings knowing how we're going to roll. I don't have that, I want to let the parties know.

So I'm actually going to require Plaintiff to submit a full list of the cases you've cited with, and you'll have two options, the two I gave. Either include the Westlaw or Lexis citation, or if you don't provide the Westlaw or Lexis citation, then you've got to attach the actual copy of the decision. Does that make sense? So --

MR. BRUMM: Thank you, Your Honor. Yes, is that attached as an exhibit?

THE COURT: Yes, attached. So you'll file just -- this doesn't need to be a joint statement. It'll be a supplemental statement that you file. And either it'll just be

a list of the cases with all the citations that the Court can easily find the cases, or if you don't include a Westlaw or Lexis citation, then to -- and let me be clear, it only appears that Plaintiff did this when, I'm assuming when there wasn't an F.Supp. or an F.3d or F.4th decision. It appeared to be other district court decisions.

MR. BRUMM: It does look like that.

THE COURT: Yeah, so I'm not saying you did this for every citation, but at least for a large handful of them.

MR. BRUMM: Understood.

THE COURT: And then if there is no Westlaw or Lexis citation or F.Supp. or whatever it is, report or a citation, then provide the actual copy of the decision.

MR. BRUMM: Thank you, Your Honor. I will do that.

THE COURT: Okay, in a minute. How much time do you need to do that? A couple days?

MR. BRUMM: How about would the Court -- is seven days reasonable? One week from today?

THE COURT: That's a little bit long, because I was planning to rule within that time.

MR. BRUMM: I did not know that. Sorry, Your Honor. How about, today's Tuesday, by Friday?

THE COURT: Okay, so I'm going to have that due by Friday morning. And then, so for discovery and other things where there is some time sensitivity, I'd like to rule on those

quickly. So you should all anticipate within a week of me getting your authorities that I will be trying to issue a ruling.

Okay. And then going forward for future joint statements and briefs, please ensure that the citations are one where the Court can easily identify the case and find it. And I -- as you can probably tell, I do review the cases that the parties cite.

MR. BRUMM: Thank you.

THE COURT: All right. I want to -- I got some general questions and then specific questions, and some of this will be directed to both parties, but in particular to the Defense.

So taking a 30(b)(6) deposition of a plaintiff entity like Central Valley Eden on topics besides standing is in the Court's view, at least a little bit unusual, but you all know this area better. So I'd like to ask to find out a little bit more about that. And even from the Court's research, there are very few cases in this type of posture. There are a couple, but I think we only found a couple of them.

Most typically when issues about 30(b)(6) depos come up in environmental cases, in a lot of cases actually, it tends to be 30(b)(6) depositions of the defendant, not of a plaintiff entity like this, again, outside of issues related to standing. So I want to hear more from each side about, I want to hear

about examples where you've had similar 30(b)(6) depositions of Plaintiff entities. I assume for the Plaintiff, you've only been on the Plaintiff side, but it sounds like Defense Counsel, you've had experience on both sides. I'd like to hear about that.

I also want to note and warn the parties, and you're probably already thinking about this. So both for the objections Plaintiff has made for the 30(b)(6) and the arguments Defense has made, you have to anticipate that these same things are going to apply to you going forward. I would assume that there will be a request for a 30(b)(6) deposition of Defendant.

So for example, the Defense, at least from the Court's view, appears to be seeking a lot of information that may be related to expert types of topics. We're going to get into that later. You have to be prepared that if I were to grant that, the same thing is coming your way.

Same thing for Plaintiff. You object to every single topic completely. There's no concession that anything is agreeable, except one, I think there's one where there appears to be some sort of a concession. So you also have to be prepared that if I agree with you, your 30(b)(6) of Defendant will be very limited because of your objections, as well. So just be aware that each side, the arguments you're raising, 30(b)(6) depositions can be taken of both sides. Assume that

however I rule will also apply for the future. So please keep that in mind.

As we go through, if that makes you rethink any of your arguments, now's your time, now's your chance to raise those and just say, hey, we want to withdraw that argument. We've taken what you've said and think, oh, maybe we don't want you to agree with us and rule because that may affect -- maybe that's going to open the door for Plaintiff to do all sorts of things in a 30(b)(6) depo. Or for Plaintiff, you may rethink some of them. So we'll go through those. So I wanted to raise that first so you could have that in the back of your mind.

Okay, I want to turn to, let me first ask Plaintiff, besides standing related issues, has Central Valley Eden previously had 30(b)(6) depos taken of it before in other similar environmental cases?

MR. BRUMM: This group, no. A previous Eden group has cases that have gone much, much further in discovery. I do not have personal knowledge of whether that discovery also included a 30(b)(6) deposition. I'm sorry, but what I can speak to is that this particular group has not had a 30(b)(6) deposition taken.

THE COURT: Okay. And Mr. Brumm, when you say this particular group, what do you mean by that?

MR. BRUMM: Thank you, Your Honor. There's been previous environmental citizens group under the name Eden.

THE COURT: Okay.

MR. BRUMM: And what you see now is Central Valley Eden Environmental Defenders focused on the Central Valley, but a previous Eden group was in the Northern District.

THE COURT: Okay. And was it connected to this Eden group? So did Central Valley Eden break off from it, or are they two separate and different entities?

MR. BRUMM: They are separate and different entities, but it's something where they have some of the same members.

THE COURT: Okay. So how about then, for Central Valley Eden, it sounds like your answer is, is you have not had 30(b)(6) depositions taken of Central Valley Eden in other environmental cases. Is that correct?

MR. BRUMM: That is correct.

THE COURT: Okay, got it. Okay, so then my question of, I want to hear what the judges did in those cases, that's not going to apply.

Okay, and then let me turn now to the Defense. And this may, so I'll ask both for Defendant, and then from your prior experience. Well, actually, let me first take a step back. I may have missed it, but I don't believe the Defense cited cases where there was a 30(b)(6) deposition permitted of an environmental plaintiff group like this one. But I may have missed it.

In your joint statement, did you cite any cases?

MS. NOVAK: I believe at least one of the cases we cited presented that kind of information. However, we also are happy to, within a couple of days, submit some.

If I may, Your Honor, just there's a few questions the Court has posed --

THE COURT: Yes.

MS. NOVAK: -- that I can answer now. So first of all, with respect to Central Valley Eden, I think this case may present the first one where they've ever had any depositions taken at all. So I'm not certain that the question of whether they've ever had a 30(b)(6) given is perhaps as relevant, given that I don't know that they've ever progressed as far with discovery as in this case. We may be the test case.

Second of all, I can think of at least two instances where I have represented an environmental nonprofit, a 501(c)(3), where they did have to produce 30(b)(6) witnesses to talk about the organization, to talk about investigations that they had conducted from a factual basis. I think if I go back and think a little more about some of the ones that have gone into litigation and made significant progress, there may be others that I've been involved with, as well.

As the Court is probably aware, many of these cases will settle before a complaint is filed. Many more will settle right after a complaint is filed. And very few start making it toward a summary judgment motion or beyond.

So the nature of these cases is that discovery may occur, but often it is the plaintiff trying to get discovery from the defendant, as the Court has noted, and not that much -- more to decide whether or not a party can bring an MSJ or the settlement posture of the parties. So I will say just personally, yes, I have defended plaintiff organizations in 30(b)(6) depositions.

THE COURT: Okay, you mentioned the two, but the way you described the subjects, it sounded more general, where you mentioned discussing the organization and the investigation. How about the types of topics you're requesting here, which really do go into the substance?

And again, I'm giving you a preview. It looks like expert related. In those two cases where you were defending or in the deposition defending, but representing the environmental entity, did those go into the substance the way that you're seeking to go into the substance here?

MS. NOVAK: Let me clarify then, Your Honor.

THE COURT: Yeah.

MS. NOVAK: We are -- I thought we were being clear that we are looking for the factual basis. It's facts that have been stated in the complaint, facts even that appear in the joint statement. I am not planning to start asking for expert opinions. But when the complaint says that the organization has photographs, I would like to know what

photographs. When the complaint says that the organization has eyewitness testimony, I would like to know who the eyewitnesses are.

With respect to something like whether or not a facility discharges industrial stormwater, they noted the case of Inland Empire Waterkeeper v. Corona Clay. There's a very strong factual component in that as well that came up in front of the Ninth Circuit right now, where the organization's witness had on multiple occasions gone to the facility, made observations about the stormwater discharge, literally followed it down into a creek, took pictures of it, took samples of it.

If Plaintiff has not done that, that's fine. Plaintiff can say they have not done that, but that is the type of factual basis that we would be entitled to. I think if anything, I am more sensitive because I have represented plaintiffs as well as defendants to the fact that I'm not trying to open this up to get expert opinions. I literally just want to know what do they think they have as far as the basis for this particular complaint in terms of violations they have observed, evidence that they may have and, as the Court also noted, information that may go to associational or organizational standing.

THE COURT: Okay, and we'll turn to those in a little bit because I do want to talk about that in a little bit more depth.

Okay, I want to go into some of the specific objections that were raised and other issues raised in the briefing. So this is, first question is for Plaintiff. There are objections that certain topics are duplicative of Defendants Interrogatory Set 1. This is on Page 13 to 14 of the joint statement. But Plaintiff doesn't identify which interrogatories are duplicative of which topics and whether or not Plaintiff actually responded to the interrogatory and provided the information requested or objected.

I did see in the response to the interrogatories and it's common, parties always include objections, but then there were some sensitive responses provided and then there's some interrogatories where it's just objections. So you've got to help me here, which interrogatories for which topics?

MR. BRUMM: I don't have that interrogatory in front of me and I apologize, I wouldn't be able to answer that question because of that. I would --

THE COURT: I have them and I can give them to you. Would you be able to do it if you're looking at it now? Cause I have the hard copy.

MR. BRUMM: I think that it would help the Court rule if we included that in the Plaintiff, what's due for the supplemental by Friday, that I could either answer it or simply withdraw it if it wasn't going to be duplicative.

THE COURT: So I would be okay with that, but that

would be reopening briefing and the other side would need the ability to respond. So here's the option I'll provide to you. You can either withdraw that or if you want to, if you do think that's something that I should look at, you can provide that information. I will keep it very tight. So less than two pages each side.

MR. BRUMM: Yes.

THE COURT: That's fine to do that.

Let me ask, and Mr. Brumm, cause this was an argument that you made and if there is discovery that's duplicative, that would be relevant to the Court's analysis. If you want to present that, you can.

MR. BRUMM: Okay.

THE COURT: I will note in future discovery statements and other briefing, if arguments are raised on either side where you make the argument but you're not giving me enough to actually analyze it, I'm just going to reject it. So I'm going to give you the opportunity right now to correct that.

And I'm fine with the proposal of providing it with your identifying the supplemental authority by Friday morning. So do the parties want to do that? So two pages each side. Let me ask the Defense, because that was the Plaintiff's proposal.

MS. NOVAK: We'll accept it, Your Honor. I just --

as we noted in the briefing, we had first attempted to get this deposition in June of last year and we've been fighting over it ever since. So at some point in time, we really would like to actually hear whether or not we get the deposition. That's number one.

Number two is my recollection is we did face nonstop objections in our attempt to get the discovery through interrogatories, mainly based on some of the arguments that are presented here, that the Harvard case out of the Supreme Court shields Plaintiff from having to give any information about its organization and membership.

In addition, I would say there's a difference between simply giving an answer in an interrogatory and allowing questions in a deposition that test the veracity of that --

THE COURT: I'm aware of that.

MS. NOVAK: -- go further than that. Yes, thank you, Your Honor.

THE COURT: Yeah.

MS. NOVAK: But if the Court is inclined to give Plaintiff that opportunity, then we will accept the two-page response.

THE COURT: Okay, so two pages by Friday morning on the duplicative interrogatory issue.

MS. NOVAK: And then may we have two or three days to respond?

THE COURT: No.

MS. NOVAK: Oh, I'm sorry.

THE COURT: So you're both going to, by Friday morning --

MS. NOVAK: Okay.

THE COURT: -- provide two pages maximum. And I would actually assume that both sides know which interrogatories are at issue.

So, Ms. Novak, I don't know that it's that critical that you see Plaintiff's version ahead of time. I would assume you would know which side it is. But both sides, you can respond.

But I will say for Plaintiff, you do need to tell them. So if this objection is just for certain limited interrogatories, then you need to tell the Defense ahead of time so that they don't spend two pages looking at every single interrogatory. And I would presume it's not every single interrogatory.

So again, what I need to know from Plaintiff is which interrogatories for which topics. And then the Defense, you can address it if you want or not.

MS. NOVAK: Thank you very much.

THE COURT: All right. So the next issue I want to get into is the attorney-client privilege argument raised by Plaintiff. I think I understand the argument, but it's a

little bit unclear to me. So I want to hear more from Plaintiff on that.

MR. BRUMM: Sure. I would ask the Court to focus on the language in the request that is about allegations in the complaint, which is where what's submitted to us, the topics seem to say in the complaint. And that is saying to me that that is seeking information about what came before the complaint, such as I'm going to look specifically at it's going to be just topic number one.

Topic number one is this investigative activities that predate the complaint. That seems to be a recurring theme for which the privilege should apply. Because it's asking me for information about what comes before the filing.

THE COURT: Okay, but if it's asking for what comes before the filing, is Plaintiff's argument that that is privileged because that is part of -- I don't understand that. So explain that.

MR. BRUMM: It's asking for information about how the litigation was being formulated by the attorney and the legal team and how the evidence is being put together, where it comes from and so forth. That is the type of conversation that goes into putting together the lawsuit.

THE COURT: Okay, I think I understand now.

All right, does the Defense want to respond to that?

MS. NOVAK: Sure, Your Honor. We've cited case law

that notes that just because an attorney has in its position or has considered a fact or a piece of evidence does not render that fact or piece of evidence privileged per se. We have a number of statements in the complaint that there is supposedly evidence of violations that my client has committed. There's also been briefing where statements have been made.

I think we're entitled to know whether or not there actually is evidence. And we are now beyond simply asking whether or not the complaint is sufficient to move forward with this lawsuit. We are getting to the point where Plaintiff actually has to demonstrate if it has proof of any of the claims that it is making.

So again, I am not asking for counsel or its witnesses to tell me all of their conversations, to tell me how they decided that a photograph or a piece of evidence could be put into a complaint. But what I am asking for is do you have the evidence or do you not have the evidence? Because I am entitled to ask what evidence exists. And if they don't have it, then yes, we could bring a motion for summary judgment. We could use it in settlement discussions.

We are not trying to ask what conversations have occurred behind the scenes at the Plaintiff organization, but we are entitled to know if there is evidence. And what we have noted here is documentation, photographic or videographic evidence in your possession relating to conditions at the

facility, as you're saying exist.

THE COURT: So why isn't that an RFP? Why isn't that an RFP separately for topic number one and with both initial disclosures with which all parties have the duty to regularly supplement? Anything a party is going to use to support their claims or their defenses, they are obligated to produce and you are obligated to supplement those. And presumably there are RFPs that the parties will be issuing if they haven't already. I saw the other discovery motions coming down the pike.

Why isn't this an RFP? Why is this a 30(b)(6) deposition topic?

MS. NOVAK: So a few responses, Your Honor. First of all, it was an RFP and photographs that are alluded to in the complaint where we were then told that the Plaintiff doesn't have them.

Second of all is to be able to even ask a few simple questions in a deposition can establish things like foundation, can establish the conditions under which the evidence was taken if it's a photograph. The photograph itself being turned over if it had been turned over would be nothing more than a snapshot in time when we don't know when it was taken, by whom, under what circumstances and why, what it was purporting to show.

I will note that early on in this matter, we were provided with a photograph that isn't even my client's

facility. So I would be curious as to know whether or not, A, if they have such evidence and if they don't have the evidence, then they can tell us in the deposition, as well. But there's a real discrepancy here between some of the statements that are being made in pleadings and then the statements that are being made in discovery.

THE COURT: All right, so let's turn to the expert issues. So the problem I have or the issue I see with a lot of these topics, one, I agree generally with Plaintiff that some of them are just way too broad. And generally, those types of topics are not permitted.

The second is that in environmental cases, almost always these issues are decided by or presented by the experts. It's very different from other cases where percipient witnesses or even the 30(b)(6)s have the knowledge and the information.

So while I understand the argument you're making, Ms. Novak, it seems very hyper-technical and it seems to actually be going to topics that experts would be addressing. But let's go through it because maybe that's not correct.

And again, in another type of case and for not just -- I'm trying to think of there -- there could be some environmental cases where they're not relying on expert testimony, but certainly with Clean Water Act cases and the types of allegations, I think it seems like they're highly going to be determinative of the ultimate issues.

So let's go through the topics I've identified as the ones that appear to be going into expert issues. And what I want to know from each side is if -- and I recognize that expert disclosures, initial expert disclosures are not until mid-August and rebuttals are not until mid-September. So the parties haven't done that yet, but presumably you're working on it. And again, that date was after the stay was lifted. You previously had a different date.

All right, Topic Number 2, which is sampling, monitoring, inspection, or other investigation. Will Plaintiff's experts be addressing this topic? Or let me give you all the topics because the answer just may be yes or no for all of them. So Topic 2. Topic 3 is violating permit conditions. Topic 5 is discharge-contaminated stormwater. 6 is impacts on the -- and I'm not sure how to pronounce this, Mokelumne?

MS. NOVAK: Mokelumne.

THE COURT: Mokelumne River. 7 is discharges of stormwater reaching waters of the United States, which as you all know is a very complex area. And 8, violations of water quality control plan.

So Topics 2, 3, 5, 6, 7, and 8. Those are the ones that to the Court appear to touch on issues that I would presume the experts are going to be addressing, but I don't know so I want to ask. So for Plaintiff, will Plaintiff's

experts be addressing these topics?

MR. BRUMM: Yes, absolutely. And I believe --

THE COURT: All of them or only some of them?

MR. BRUMM: Well, I think that -- what I've done, Your Honor, to prepare for the hearing was to just write down a couple of sentences for each topic and to note where they're going to be applying.

Okay, so just for example, in Number 2, Your Honor, I had written down this morning is that the sampling, the monitoring, and the inspection in Number 2 is absolutely going to be something that the Plaintiff's expert is going to testify to. The investigative activities portion of that same topic is what's asserted to be privileged, but it's the expert for sampling, monitoring, and inspection. So absolutely.

Third, violation of conditions of the permit. Conditions of the permit is for an expert's opinion. Number 5, claim of discharge is also expert opinion. The impacts we allege in Number 6 is, I have just a very slightly different view of that one is that that one is something more for the standing witness to talk about their aesthetic interests underpinning their standing. That's how I read that one, but I see also that it's possible -- impacts you allege in the complaint, that is also for an expert. This pollutant impacts the waterway in this way, and so forth.

THE COURT: Okay, but let's pause there, Mr. Brumm.

MR. BRUMM: Thank you.

THE COURT: So then it sounds like you're agreeing that in terms of impacts as to standing, then that would be a permissible topic, yes?

MR. BRUMM: It would be a permissible topic for the standing witness --

THE COURT: Right.

MR. BRUMM: -- but not for 30(b)(6) examinations, that we would produce the standing witness to hear that. So the objection is that it was just the wrong format of depositions. The standing witness is going to be deposed, and I would imagine that the line of questioning as to the aesthetic interest would ask questions of what that person's opinion of the impacts actually were.

So you have two opinions. You have an expert's opinion that is related to the permit, and you also have your standing witness who has the aesthetic interest. So I apologize that the word "impacts" there has actually two objections. One, that it's an expert, and the second, that the forum of 30(b)(6) is not appropriate for a direct standing examination.

THE COURT: Okay, Topic 7.

MR. BRUMM: Thank you. Topic 7, I'm just going to go back here, and I'm glad that I had done this this morning.

Okay, so the basis of the WOTUS connection, WOTUS

connection, Waters of the United States connection from the facility to those waterways is expert opinion. That's an expert examination, yes. I believe Topic 7 also has a formulation of the complaint problem also for privilege. But I think the Court meant to identify nine rather than eight.

THE COURT: No. No, I identified eight.

MR. BRUMM: Okay, eight.

THE COURT: Oh, wait, wait, actually, no, I'm sorry. It's because the 8 is --

THE COURT: No, you're right, 8 is the business purpose. It's Topic 9 is violations of the Water Quality Control Plan.

MR. BRUMM: Yeah, that's --

THE COURT: Yes, thank you for that correction.

MR. BRUMM: Thank you. That will be expert, also.

THE COURT: Okay, and then let me hear from the Defense. Will the Defense experts be addressing these topics? Again, 2, 3, 5, 6, 7, and not 8, but 9.

MS. NOVAK: Your Honor, I think the answer is yes. Expert testimony will be a huge portion of the case as the Court has noted. However, experts need facts upon which to formulate their opinions. They can't simply look at the law or the permit and render opinions in a vacuum. So I am happy to, and I've always been happy to try to narrow some of these topics to keep them factual based and not go into the realm of

expert opinion.

But for example, the question of whether or not there are sampling results that Plaintiff will allege show violations at the site, again, I would consider that factual. If they're saying that only an expert has conducted that investigation, then I guess we'll get there at that time. But we're entitled to know the scope of the universe of the facts upon which they've made these allegations.

At some point in time, as I noted, we have to know what exactly is being alleged against us. And in the notice of intent to sue letter and the complaint and in pretty much everything, they're throwing the kitchen sink at us. It's very difficult to try to defend ourselves if every single part of the permit is allegedly in violation. So we're trying to use a combination of written discovery to narrow things down.

In addition, if there's anything that a witness can tell us as to whether or not they have percipient knowledge, then that's all we need. We're not trying to ask for expert opinion. So I will, to some extent, agree with the Court that asking for Number 9 violations of the Basin Plan, I'm happy to withdraw that one because that will come up with respect to experts. And that really is something that an expert would look at other documents outside this permit for. And presumably, there's going to be more than just documents in a vacuum. There would have to be some evidence upon which the

experts rely.

And then with respect to the issue of the basis -- hold on, this is 1, 2, 3, 4, 5, the basis of the allegations in the complaint, I mean, we probably will also have to bring further motions to compel to try to outline what exactly is being alleged against us. But for purposes of this deposition, I'm also fine withdrawing that one.

THE COURT: Topic 5, the discharge of contaminated stormwater.

MS. NOVAK: Oh, no, I'm sorry. It would be Topic 6.

THE COURT: Topic 6.

MS. NOVAK: And topic --

THE COURT: Impacts.

MS. NOVAK: -- 3, the basis of the allegations that Sweetener has violated conditions of the permit.

THE COURT: Okay, so Topic 3 and Topic 6 are withdrawn.

MS. NOVAK: Yes.

THE COURT: Okay. So, but I do want to check --

MS. NOVAK: And 9. And 9.

THE COURT: Okay, right, 9. On Topic 6, the Plaintiff has agreed that the Defense is entitled to that as to?

MS. NOVAK: Standing.

THE COURT: Standing.

MS. NOVAK: Correct.

THE COURT: So I want to make clear that, and it sounds like the parties, there's a separate deposition notice already for standing, a standing deposition. Is that right?

MS. NOVAK: There's a --

THE COURT: Or there's discussion of that? What's going on there?

MS. NOVAK: I filed a motion to be able to serve the standing witness through a means different than personal service because Plaintiff says they do not know where the standing witness currently is located and we cannot find him. So that motion is on calendar for later this month.

THE COURT: Okay. Mr. Brumm, you're going to have to figure that out. I mean, if anything, you would think Plaintiff would care most about that --

MR. BRUMM: Right, I --

THE COURT: -- because if you lose your standing witness, you're in real trouble.

MR. BRUMM: I think that --

THE COURT: But presumably you have more than one, but --

MR. BRUMM: We do, but I think that those conditions have changed and that Ms. Novak has not heard about the Plaintiff's recent contact with Mr. Astin and that his deposition will in fact be resolved. I don't believe that that

motion is actually going to be heard. I see that it's on calendar. You have an opposition to it that's due today that it's actually going to be filed by my office, also.

But what I think is that that deposition will go forward and that it will go forward, I believe, sooner than the previously proposed July date. I always had July available, but we have more court dates there at the end of July. So I am informing the Court now that I am in good contact with Mr. Astin. I just haven't had occasion to inform that -- or to try to resolve the issue of his deposition. We will be doing that and we'll be doing that prior to the hearing date to try to take that off the Court's calendar if we can.

THE COURT: Okay. So that would definitely be advisable. And just a note on service. You know, courts don't like when parties are arguing about service. Parties should be able to work that out. And I would presume that Plaintiff would prefer to not have to require a personal service of its individual standing representatives because you can provide it yourself. Certainly those individuals probably don't want to be surprised and served in person anyhow.

So I would hope also that the parties can work that out. It seems like it's in the best interest of everyone to work those types of issues out. If you can work it out, it may not necessitate the filing of an opposition. If the parties can reach an agreement and then file something saying the

parties have resolved this, no opposition is needed, motion is withdrawn, that seems like that would be, you know, the best use of all of your time and resources.

But that's on the parties to figure out because it's your filing deadline. But, okay, so glad to hear that may be resolved.

Okay, and going back to Ms. Novak, so Topics 3, 6, and 9, the Defense is withdrawing from its 30(b)(6) request.

MS. NOVAK: Correct.

THE COURT: Okay.

MS. NOVAK: And then may be heard with respect to, I think Number 2, I did address, can I go to 5 and 7 because they're related?

THE COURT: Yes.

MS. NOVAK: This goes to something I noted earlier, Your Honor, which is the legal definition of a water of the United States is a source of tremendous debate. That would be for a court primarily to decide. Experts can weigh in on things like what kind of rainfall might be adequate, et cetera.

However, there is also a factual component to this in that the Plaintiff is alleging that the Defense facility has water coming off of its surface and going down into the storm drains. To the extent that there is evidence of that, we're entitled to know what it is, whether that is video, whether that is eyewitnesses, et cetera.

So, again, this might not be the world's longest deposition, but it is being used very surgically to try to understand what is the evidence that is being alleged to support the violations, in addition to the issue relating to the associational membership standing.

And I would submit, Your Honor, that for a lot of these, the question isn't whether or not Plaintiff should provide a 30(b)(6) witness, it's whether or not these topics could be narrowed to a point where it's not overreaching. And I am more than happy, I have always been more than happy to have that conversation.

As we noted in our briefing, though, the conversation didn't go toward ever, could we narrow these down in a way that made Plaintiff more comfortable? We were being simply told you cannot have a 30(b)(6) at all.

And I'm sorry, Your Honor, I'm just going to respond to the comment from a moment ago. I had to hire a private investigator to try to find the standing witness. I got threatening emails from someone on the Plaintiff's side when they discovered that I had done that. And it's cost my client a lot of time and money to try to track down a witness that now I am being told for the first time in court, gee, I didn't have to bring a motion to alternatively serve him through email or some other means.

I really wish we'd be able to work these things out.

I would prefer that we can come to the Court for informal dispute resolution when we have these issues and not be in the position where we're constantly having to file motions or respond to motions.

THE COURT: So let me make a few notes. I do have a process for informal discovery conferences. It is much faster, two-page joint letter, no exhibits unless you meet the criteria for exhibits, and we do it by phone, and it's usually within 10 to 14 days of the request.

So definitely for issues that are less complex, I would highly recommend that. It saves everybody time and it is, and I almost always rule right there during the conference or within a day of the conference. So it's very fast. So especially for issues that are not very complex, but I've also dealt with 30(b)(6) and other issues in those. I would definitely recommend that.

I'm not going to -- this issue about the standing representative is not before me. So I'm not deciding that. I'm not even suggesting that I am. But I do want to note that if what Ms. Novak is saying is true, then Plaintiffs need to knock it off. Parties should be cooperative during litigation.

You know that standing representatives are going to be part of the litigation. Not providing how they can be located or making the other side hunt for it is not really appropriate. Hopefully that did not happen to the extent that

it's being raised. But even sharing this type of information for the first time now, that's a little hard for me to understand.

I understand you saying there's an opposition to you, but if the person was located, why isn't that information provided right away to the other side? I don't understand.

MR. BRUMM: I think that it's because that has happened just within the last 48 hours or so.

THE COURT: Okay.

MR. BRUMM: That that good contact was finally achieved.

THE COURT: Okay,

MR. BRUMM: So I had a period of time where I did not have good contact. I now have that good contact. That good contact is very recent in time. That is the reason why no one has heard about it. You also have the priority of this opposition, as well.

I would like to work all of that out. I am absolutely not hiding anyone from service, okay, but I do have some problems sometimes with, that's what happens with standing witnesses sometimes and what we call the rigors of litigation. I have been able to reestablish that contact.

That person is going to continue with their volunteer -- continue as a volunteer for that standing purpose and they are going to do that. Again, I can't guarantee the Court that

I won't also file that opposition because we're here at the end.

THE COURT: Yeah, that's fine. That's fine. The party -- you have to do what you need to do to meet court deadlines and all of that, all of this. I am going to, after we get done here, I am going to require the parties, you can stay here. There's a big hallway outside. There's conference rooms next to the courtroom as well, witness rooms. We can open those up for you.

I am going to order the parties to sit and talk through issues because it seems to me that there are some communication or coordination issues. And one of the benefits of having in-person hearings is you get the opportunity to do that without anybody else, without the judge being there, without your clients being there. And a lot of times you can resolve a ton of issues even better than phone or email. And so much is done by email that it actually sometimes impedes things.

So I'm going to require the parties to do that. I'm not going to set a time limit, but I'm going to require you to do that because I'm hopeful that you will be able to work through various issues, including hopefully some of the sort of motions that are coming down the pike that aren't this 30(b)(6) issue.

Let me move on to -- well, first let me check in with

the Defense. Any other arguments you want to present on the topics I've identified that to the Court appear to go to expert-related issues?

MS. NOVAK: I think --

THE COURT: So you've mentioned 5 and 7.

MS. NOVAK: And we previously talked about Number 2, well, Your Honor.

THE COURT: Right, okay.

MS. NOVAK: Okay.

THE COURT: So you've addressed all of them?

MS. NOVAK: I think we have.

THE COURT: All right. Let me turn back to, I got a little sidetracked. So I heard about the attorney-client privilege. I want to ask Plaintiff about the work product argument. So one thing I'd like to hear from is one of the arguments in the Defense brief is that the work product argument does not apply to deposition topics.

So I want to hear -- and I'm not saying I agree or disagree with that, but I want to hear from Plaintiff on your response to that argument.

MR. BRUMM: So the assertion is that of privilege because it is what's the line of questioning is about the formulation of the complaint, the gathering of the evidence. So it is not necessarily something that would be work -- I feel like a work product privilege objection would be something

closer to a request for production of documents for which you would then have the objection of work product.

Here in the 30(b)(6) context, you have a line of questioning in deposition. So because of that line of questioning, this language about what is in the complaint as alleged in the complaint, as I'm seeing here in the list, that is more of a pure privilege than work product. That is the choice of litigation means, strategies, and so forth. That is the assertion of privilege.

THE COURT: Okay, I think I understand. So still work product, but you're saying it's not about the document but the attorney's --

MR. BRUMM: Mental impressions.

THE COURT: -- work product and their impressions and strategy in deciding what is being raised or not raised in the complaint. Is that right?

MR. BRUMM: That's correct.

THE COURT: Okay. All right, Ms. Novak, do you want to respond further?

MS. NOVAK: My only response, Your Honor, would be that if for any reason my questions in deposition start to move into mental impressions of attorneys or attorney-client privilege, Counsel can certainly object, and I promise to be reasonable during the deposition and to not try to elicit privileged information at that time. I mean, I think we've

also covered it in trying to narrow some of these topics to avoid the possibility of that happening.

THE COURT: All right, let me turn to Topic 4. This is going to member injury. So I mentioned before that it appeared that Plaintiff was objecting to all topics, but there appeared to be one where there is at least some form of agreement, and I want to direct Plaintiff's attention to that.

So on Page 11 of the joint statement, there appears to be a recognition from Plaintiff that discovery in this area would be appropriate as to those Plaintiff members, quote, who have standing and who have been injured. And the reason I want to ask about this is it appears to the Court that there's a recognition that this topic, at least in part, is a valid topic.

MR. BRUMM: For the standing witness, because the aesthetic -- pardon me, the aesthetic interest of the standing witness is what has been injured. So the standing witness could be questioned about that range of interest and the aesthetic nature of it.

So my objection is, once again, that a 30(b)(6) deposition in which the requirement of me is to select the witness for the Defense to question, it would be the standing witness. So I would imagine that the Defense would rather notice the deposition of the standing witness and apply that line of questioning to the standing witness rather than in a

30(b)(6) context where inevitably the person that's selected is going to be the standing witness, which would be something very different from the other topics.

THE COURT: So for a 30(b)(6), it is not uncommon for entities to designate multiple individuals. And there isn't a limit on the number that the entity designates, because it's up to that party to figure out which individuals are appropriate.

So it sounds like you're saying you do think this is an appropriate line of questioning, but for the standing witness. I guess then the question I have for you is, is why then doesn't Central Valley Eden, in designating, because it's up to you to designate the individual for certain topics, why doesn't Central Valley Eden just identify and designate the individuals who they think can be or should be the ones who address this topic?

And then if it is the same person as the standing deposition, and I forgot the name of the individual that you mentioned, then presumably the parties would only want one deposition of that individual to occur, and it can both have a 30(b)(6) component and it can have another component. And it's up to actually Ms. Novak, and both of you actually, to make sure the record is clear on that.

But maybe what you're making is a pragmatic argument of there is going to be a witness who testifies on this, or multiple witnesses, it's going to be the standing witnesses.

Because it doesn't sound like you're saying, it doesn't sound like Plaintiff is saying this topic is not appropriate, it sounds like you're saying it should occur in the deposition with the individual for standing.

MR. BRUMM: Absolutely.

THE COURT: Is that right?

MR. BRUMM: Absolutely, yeah, because the 30(b)(6) context, which I've heard many times from the Defense, is about what does the entity know. What does the entity know, which is something different from that standing witness, because that seems to -- that is my recollection of discussions with the Defense, is they want to find out what the entity knows, and not what the standing witness knows. They viewed them as two different things.

So I just feel like the standing witness is somebody that is being represented by the group, not necessarily, and is a member of the group, sure, but is not necessarily someone who is speaking for the group. They just have standing. They have an aesthetic interest in the subject area, sure, but what they don't have necessarily is knowledge of the entity that's helping them, or full.

THE COURT: All right, let me ask Ms. Novak, I'm assuming that this topic goes to, and the reason the Defense is seeking it is because it's relevant to standing. Is that right?

MS. NOVAK: Yes, Your Honor. May I also make one other observation?

THE COURT: You can, but I have a question. So it's for standing purposes. The Plaintiff has agreed that, yes, the Defense is entitled to this from the standing witness. It's sort of the same thing. So can't that questioning occur there? Because it's relevant to standing, and presumably you're going to have an argument challenging standing, or maybe not, maybe you'll do the discovering thing, it's not worth it, we're going to lose standing. So can't it happen that way?

MS. NOVAK: That particular witness can be questioned with respect to the facts that would go toward proving or disproving standing as an associational membership witness.

I think Mr. Brumm identified one difference between a 30(b)(6) and an individual percipient-type witness, and that is the organization itself. And here, I'm going to note that we have a bit of a whack-a-mole situation, in that it took us three supplemental initial disclosures from Plaintiff before one standing witness was named.

In a prior iteration, Plaintiff listed three individuals as Persons A, B, and C, describing them as the standing witnesses in great detail, but without any names or contact information. And there have now been, I believe, six different amended initial disclosures from Plaintiff saying, in some circumstances, some of the prior versions are removed and

now replaced, and some of it stands. We don't have a clear picture that the one witness who has been named is the standing witness.

And my fear, Your Honor, is that if for some reason he does not provide beneficial testimony for the Plaintiff at deposition, if for some reason he chooses not to go through with this as we head closer to trial, I don't want to suddenly see that there are now other people that are going to be offered later on down the road as, oh, oops, now we have new standing witnesses. I think we get the opportunity to know where that proof lies.

And in fact, the case law is very clear that the Plaintiff has to be able to make that showing at the various stages. And so if they can't make it, they don't get a do-over later on. Presumably, this is the witness upon whom the complaint is based that enabled them to even come into this Court.

THE COURT: Well, so you all know this better than I do. I've done environmental cases, too. A plaintiff entity is not limited to one standing witness. They can choose to have one standing witness, but you may have multiple standing witnesses.

But to the Defense's point, yes, you need to identify who that individual representative is who has standing, and you do need to prove it at different stages. I don't think that's

in dispute.

If we were to get into the situation, Ms. Novak, that you're mentioning, which is this individual's identified now -- the Plaintiff is electing to only identify one individual as the individual for establishing standing. If that then changes, then the Defense will be prejudiced. I think that's likely correct, but that issue's not before me.

And then again, Plaintiff, of course, will have to be careful, because then if you do that, you may be prohibited from modifying and changing who that individual is. Presumably, you would be able to do that within the discovery time period but, again, I want to caution you. I believe Judge Shubb has the same thing in his definition of completion of discovery. I think you were both here for the first matter. I think every single one of our judges have that.

You will need to be careful to make sure that that is done properly, so that by the time you actually get to the stage of summary judgment motions or other motions, because there can be other motions brought as well, that it's clear who that is, and it's not being changed at the last minute. Of course, that's in Plaintiff's best interest. It's your burden to establish standing, and you want to make sure to do that. So of course, I'm assuming you would do that.

So then going back to my question of, it sounds like this issue, Topic 4, can be addressed in the deposition for

whichever witnesses are identified for standing. I know there's been the mention of one, but Plaintiff could have more than one representative who has standing, and then they would all be subject to deposition. I don't think there's a dispute really there, and it can be addressed with each of them.

I don't think it's fair to require the Plaintiff to identify one individual and try to identify all potential standing issues, and I don't think you're trying to do that, but it sounds like this can be addressed in the deposition with the individual who's been identified for standing.

I want to make sure that I'm understanding that as Plaintiff's position. Is that correct?

MR. BRUMM: That's correct, Your Honor. Thank you.

THE COURT: Okay. And then for the Defense. Is that correct?

MS. NOVAK: Yes, Your Honor, just with the caveat that we may find ourselves in the position of not knowing whether that is the standing witness. And we certainly don't want to be surprised or prejudiced later on down the road. We can reserve that issue for a different forum and discussion if that becomes the case.

THE COURT: I think you would have to, because I understand why you're making that argument, but it's not ripe because that hasn't happened. Plaintiff is certainly on notice. You've also now raised it in open court, and you'll

have a transcript of it.

I would hope that that's not an issue. I understand why you're raising it, but it hasn't happened yet, so I don't know that that's really something appropriate for us to figure out now. But it does sound like both sides agree that this issue can be addressed in the deposition of the individual that Plaintiff has identified for standing purposes, and I want to make clear, I'm not saying Plaintiff only has one or they're limited to one, right? That's up to Plaintiff to figure out and decide, and there are often more than one individual who may establish standing for a plaintiff entity.

All right, that addresses Topic 4. Let me see if I have any other questions.

All right, I have a question as a Topic 8. This is for Plaintiff's purpose, mission, organizational structure, and membership. What is the relevance of this topic? Again, in certain cases, it totally makes sense. In a Clean Water Act case, what is the relevance of that to the claims and defenses here?

MS. NOVAK: Sure, it goes both to associational standards of standing as well as organizational standing. Even in the cases that the Plaintiff cites in its briefing and certainly in some of the ones we've done, any discussion of standing, the courts do look at some of the indicia of membership, what the organizations are about. And that's true

not only for Clean Water Act cases, it's true in any of these situations where we're looking at an organization purporting to speak on behalf of its members.

So to the extent that they have a structure, to the extent that they have a mission, to the extent that they communicate to their members. And just before Court today, I went back and looked at the Harvard case because Plaintiff is fond of it. Even in that case, the Supreme Court notes that one of the reasons why it doesn't have to get into issues of standing is because there's already been facts established about the organization itself, how many members it has, how often the organization communicates with those members, how much input they have with respect to the mission and the litigation at hand.

There's probably about six or seven different foundational issues raised in about three sentences of the Supreme Court decision that all would be relevant here. And so to the extent that they're making representations about their organization, even in the joint statement, about how it's comprised, the fact that it has members, what it does, that's arguments of counsel that has not been established factually. And we have asked for it in discovery that has not been produced to us, either in documents or in interrogatory responses.

And to the extent that they are the only ones who

possess that information, we would be entitled to inquire about it. We cannot find it some other way. And to be clear, I'm not asking for a membership list. I don't want the names of their members, right.

THE COURT: Well, you're not entitled to that.

MS. NOVAK: Yeah, right. Exactly.

THE COURT: You can't ask for that.

MS. NOVAK: Exactly. So, but what we are entitled to know is what is the relationship between them, the organization and its members.

THE COURT: All right, let me hear from Mr. Brumm on this.

MR. BRUMM: Thank you, Your Honor. Students for Fair Admission v. Harvard, the holding of it is very clear. In that case, the Supreme Court said that the indicia of membership was not going to be looked into because there was already a sworn statement on file from identifiable members.

In other words, for the court, the fact that the organization had identifiable members and who were going to have standing was sufficient for the court on the topic of indicia of membership, is that here it is, that you could hold the document up in Court and say, here's the sworn statement that's been filed by an identifiable member.

For the Supreme Court in Students for Fair Admission v. Harvard, that is where the indicia of membership inquiry

actually is going to end. And we're saying that that same logic should apply here, is that you've got an identifiable member that meets the standard of Students for Fair Admission. That is the holding that the Supreme Court issued. And my interpretation, my reading of that, Your Honor, is that it takes this indicia of membership problem out aside the scope of 26(b)(1).

THE COURT: A question for you, Mr. Brumm. Has Central Valley Eden, in other environmental cases, been found to have standing?

MR. BRUMM: Judge Gonzalez Rogers.

THE COURT: In the Northern District.

MR. BRUMM: In the Northern District. Judge Yvonne Gonzalez Rogers did find standing in, I believe it's the Laptalo case, so you have the --

THE COURT: How do you spell that?

MR. BRUMM: L-A-P-T-A-L-O.

THE COURT: Okay.

MR. BRUMM: I believe that -- it is my belief based on my recollection, as you see this not in front of me, that that is the case in which Judge Rogers found standing for the previous Eden group. The previous group in which Eden had a name.

MS. NOVAK: Not the current group.

MR. BRUMM: The current group has not come to a

decision on that.

MS. NOVAK: Your Honor, I believe the issue may have come up with respect to a case called Central Valley Eden v. Airgas in this district, but the issue arose with respect to a motion to dismiss for lack of sufficiency of the complaint. That may have been initially granted and then later plaintiff was allowed to amend, but it did not make it past the initial pleading stage.

If I may also, some of the relevant citations in the Harvard case, and again, Harvard is 600 U.S. 181, but where it goes from Page 199 to 200, the Supreme Court specifically notes that the issue of whether or not the organization satisfies the three-part test for organizational standing is not at issue. The respondents didn't contest it.

Moving further in that case, as we get to Page 201, that's where the court notes that in a prior version of the Harvard case that had already made its way through the courts, there was a significant amount of information about the organization and the court therefore doesn't get into it.

I'm also going to note that in at least one other case that Plaintiff cites, and I don't remember if it's the Waste Action District Court case from Washington or Oregon, the court in that case found that a similar type of organization had standing, but in its statement, it refers to testimony from the standing witness, as well as other types of information.

So again, I find nothing in the case law that says that these are not still very relevant questions. These cases continue to ask questions like how many members an organization has, how it was formed, what the mission is. And in cases that are from the Ninth Circuit and beyond, and I believe we cited some of them, the question of whether or not an organization has organizational standing has to turn on some of these questions.

And then when we get to associational standing, we're asking questions about the members themselves. And the percipient witness probably cannot speak for the organization as to how it was founded, why it was founded, how it communicates with its members, the participation that other members have in it. That individual member can only speak for himself.

And again, I will be very mindful in the deposition of not trying to ask any witness to speculate, but that is a huge difference between a 30(b)(6) witness and an individual percipient witness. And presumably, the percipient witness cannot bind the organization to provide this information.

THE COURT: Okay, let me go through my notes. I think those are all the questions I had, and I'll give each side an opportunity to make any brief argument. But give me a moment, let me look through my notes.

(Pause)

THE COURT: All right, I don't have any further questions. So let me first turn to Plaintiff for any additional argument you would like to make. But before we get there, I want to note one thing in case this is something both sides are going to argue about.

The argument that was raised by the Defense that there wasn't an adequate meet and confer on the protective order, I just want to give you advance notice, I reject that argument. These two issues, the motion to compel a deposition and protective order, they are about the same thing. If the parties didn't discuss certain things in more detail, I understand that, but I think that's a technical argument and the Court rejects that argument.

So to the extent you were going to raise argument about that, you don't need to. But let me hear from both sides on any additional argument you would like to make. And it's also okay if you don't have any additional argument.

MR. BRUMM: I would like to perhaps just close on Topic 8, Your Honor, is that the short, short story, the layman's story of the <u>Harvard</u> case is that Harvard's attorneys took that discovery of these kids way, way too far. The Students For Fair Admission were kids at Harvard who said that they were being discriminated against and they didn't want their names in the public record for the rest of their lives.

These are college kids. They have their whole adult

lives ahead of them and they did not want their names being associated with this forever. And so the Supreme Court steps in to say, hey, these are the sworn statements that the court is relying on for indicia membership and we're going to end the inquiry there.

That is the short story of what actually happened in the Harvard case and why it is that the court sees the language that it does. Judge Barrett was stepping in to stop this discovery in the direction of indicia membership in order to protect those kids. That is what that case is actually about.

And we see just the same -- it's a line of questioning, and the Court has heard some of what that line of questioning is this morning. The assertion is that the holding in Harvard prevents that line of questioning.

THE COURT: Okay, thank you. And then Ms. Novak, any additional argument you'd like to make?

MS. NOVAK: Sure, just a couple of things. As I understand Counsel, there's a concern that we're going to go too far. We're going to seek too much information. We haven't yet received any 30(b)(6) witness, let alone a situation where we're seeking multiple, multiple witnesses on multiple, multiple topics consecutively. We've never had our shot in the first place.

And again, as we looked for some sort of case law to support Plaintiff's argument, we found no situation where a

court said that an organization could shield itself from a 30(b)(6) deposition, whether in an environmental case, a Clean Water Act case, or anywhere else. This is just foundational.

This is pretty standard discovery in a case involving any type of organization. And there is simply no case law that says that if you call yourself an environmental organization, you are no longer subject to 30(b)(6). There is no case law that says that. There's no language in the statute creating that exemption, nor is there any such case law or exemption that says if it's a Clean Water Act case, an organization can shield themselves.

Without that type of authority to outweigh the rule that we allow parties to conduct discovery so they actually can litigate their cases, then the question really comes to what is appropriate for us to ask of a 30(b)(6) witness. And we've discussed that thoroughly today. I agree to not overstep. I think I have expressed myself as to the foundational issues that we believe we're entitled to, that my client needs to defend itself.

And the fact that Eden has not actually litigated its prior cases should not weigh on whether or not this becomes the test case for all other cases they are going to bring in the future. The law is the law now, and we're entitled to the discovery that we have requested.

And I agree that we can be bound by some guardrails,

but that does not mean that Plaintiff should get a protective order to be the only organization out there that does not have to provide a 30(b)(6) witness. So thank you, Your Honor.

THE COURT: All right, the motion is not yet submitted because the parties are going to be submitting additional information from, and just to summarize -- and a written minute order will come out, but by Friday morning and let's say 10 a.m., Plaintiff will provide either or a combination of an updated list of authorities or the actual copies of decisions with either a Westlaw or Lexis citation, and then two-page limit for each side addressing the argument that some of the topics are duplicative based on the interrogatory responses.

I also want to note, I don't remember the order in which we discussed everything. It could be that that's even shorter because the Defense has withdrawn three topics, and it could be that those were some of the major ones where that was an issue. So if that's the case, all you need to do is just let Defense know ahead of time, but just say this argument is no longer an issue because the Defense has withdrawn the topics for which this was relevant.

I'm not saying that's the case, but I recognize that with the withdrawal of certain topics, that would of course narrow the issue. So you don't need to address any duplicative interrogatory arguments for Topics 3, 6, and 9.

MR. BRUMM: Thank you. Your Honor, I have just --

THE COURT: Any other questions?

MR. BRUMM: Your Honor, I just have --

THE COURT: Yes.

MR. BRUMM: -- a request of the Court is that I have been using my notes here, and I've been using it throughout the morning and I'm glad that I did that. I think that it would be beneficial to the Court to see this very, very short list of notes that would fit, I think, within the two pages anyway that has already been allowed.

I'm just asking for the Court's permission to put that there, minus 3, 6, and 9. And I say that because it's just a summary of the objections.

MS. NOVAK: I'm going to object, Your Honor.

THE COURT: No.

MR. BRUMM: No?

MS. NOVAK: That just means he can do it faster.

THE COURT: Wait, wait, wait. Hold on, let me stop everybody. No.

MR. BRUMM: Okay.

THE COURT: I am only limiting it to this specific issue, not an opportunity for both sides.

MR. BRUMM: Okay.

THE COURT: Let me just tell both sides. I don't want to see any other argument. I specifically had a question

on the duplicative argument because I couldn't tell which interrogatories for which topics.

MR. BRUMM: Okay.

THE COURT: So limited to that.

MR. BRUMM: Thank you.

THE COURT: And again, there are certain topics that are no longer at issue, and those are Topics 3 -- wait, let me make sure I have the numbers down correctly. I wrote them down, but let me confirm.

MR. BRUMM: 3, 6, and 9 is what I have.

THE COURT: That's correct, right, Ms. Novak? 3, 6, and 9?

MS. NOVAK: That sounds right, Your Honor.

THE COURT: Okay. Yes, so that's what I had written down too, and it sounds like that's what Mr. Brumm has, as well. So I don't need to see that those arguments or the objections related to 3, 6, and 9. But to the extent there are still any arguments in that category for other topics still at play, then please -- and I just want to know which interrogatories for which topics. Okay, just keep it short.

MR. BRUMM: Yes. Yes, Your Honor.

MS. NOVAK: And Your Honor, I'm sorry, just as a clarification, I believe the Court requested that Counsel provide those to us in advance of the Friday deadline.

THE COURT: Yes, so that Defense is not looking at

all of the interrogatories. If you're only focused, I'm just going to, if you're only focused on seven of them, for example, then they don't need to be looking at every single one of them. So yes, please identify them ahead of time.

MR. BRUMM: Okay.

MS. NOVAK: And Your Honor, going to the issue of the parties trying to work things out, I'm going to request, we've only heard from Mr. Brumm once in the last few months, despite multiple reach-outs. I am going to request that Plaintiff agree that it will respond to our requests for things like meeting and conferring or questions we have to coordinate so that we don't have to keep bringing motions before the Court.

THE COURT: So I would presume that that is how the parties should interact. And so I'm not going to make any type of order on that. The parties should be responsive and whoever is lead counsel or whoever the point person is, sometimes it's more than one attorney --

MR. BRUMM: It is.

THE COURT: -- the parties need to be responsive. I am, again, going to require after we conclude here and I'll ask Ms. Wood to unlock one of the witness conference rooms. I want the two of you to sit down and meet and talk through as much as you can. I'm not going to set a time limit for anything like that. I know judges who do that, I'm not going to do that. But I think that will be helpful and hopefully resolve some

pending and outstanding issues.

Again, Mr. Brumm, I understand you may still need to file your opposition all of that. But --

MR. BRUMM: I've --

THE COURT: But let's just -- hopefully the two lead lawyers sitting down in a room, you'll be able to work through certain issues.

MR. BRUMM: I just don't -- I don't know, you know, what progress I could make today on those issues. That's really the question I have is that I'm not sure exactly which issues we're supposed to discuss. There are quite many of them. It seems evident to me that you might like to figure out when I could get a deposition done for the standing witness.

I don't think that I would be able to reach a date for the Court on that today. It would be something much easier if I could return on that topic shortly, because I don't think that discussing that piece of it with Counsel is going to be fruitful because I don't have that person here. I don't have --

THE COURT: Right, right.

MR. BRUMM: -- access to my staff. So I -- it's not that I don't want to assist the Court. I do. I just -- I'm kind of wondering what progress we would be expected to make --

THE COURT: Right.

MR. BRUMM: -- together in that room for right now.

THE COURT: So Mr. Brumm, so that is a good question. So let me be clearer. I'm not ordering the parties to discuss certain specific topics or to reach resolution of certain specific topics. What I want the parties to do is to separately meet in person here after we conclude. And there are a number of different issues, there may be even more that aren't presently -- and I want to say there are lots of motions that have been filed that are not yet submitted. So they're not ready for Court decision.

But by doing that, the parties have already identified disputes that are out there, but briefing is still open, right? There are a number of discovery motions. There's this issue about the individual. There are a number of those. You may have other issues that the parties, you know, it would be helpful to try to resolve. I'm not ordering you to resolve them today. I'm not going to do that and I can't do that.

But I'm going to require you to sit and talk through as much as you can. And the parties will have to decide. But there have been a number of disputes already raised formally with the Court, not yet ready for decision. That seems like a good starting point.

Even today, from the hearing here, we've been able to reach agreement on certain things with certain topics being withdrawn, some clarification on a topic from Plaintiff, all of those types of things. Those are the types of things that can

get done when people sit down and our meeting together.

So I'm hopeful that by requiring you two to meet together after this, that maybe there will be some progress. There may not be. But at least opening the lines of communications, meeting in person which, again, that's one of the best ways of getting things done. And again, it seems like there's interest from both sides on potentially resolving. It can only help with that, as well.

So I want the parties to meet in person after we're done. I'm not saying you must discuss these topics or resolve these topics. I don't think I can or should do that. But I'm hopeful by doing that, maybe the parties will resolve certain issues. It could be that you narrow certain issues. It could be that you agree to certain things.

But based on what I'm seeing, both in the written filings and here today, it seems like better and more open communication can only help things. I will say, even in cases where there aren't issues, it can only help things. So I am going to order the parties to do that. And so that issue, I don't want to speak further on that.

Is there anything further at this time, Ms. Novak?

MS. NOVAK: No, Your Honor.

THE COURT: Okay, Mr. Brumm?

MR. BRUMM: Nothing further.

THE COURT: Okay, we're concluded. Thank you.

MS. NOVAK: Thank you very much, Your Honor.

(Proceedings were adjourned at 11:49 a.m.)

* * * * *

CERTIFICATE

I, DIPTI PATEL, court approved transcriber, do hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and transcribed to the best of my ability.

______________________________

DIPTI PATEL, AAERT CET-997
Expires: December 6, 2026
Liberty Transcripts Date: May 9, 2026