Adam D. Brumm, Esq.  SB #257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA  95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CENTRAL VALLEY EDEN
ENVIRONMENTAL DEFENDERS, LLC, a
California limited liability company,

        Plaintiff,

  vs.

SWEETENER PRODUCTS, INC., et al,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:25-cv-00078-WBS-CSK

**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT ON PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES BY DEFENDANT TO PLAINTIFF'S FIRST, SECOND AND THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS; and FIRST SET OF REQUESTS FOR ADMISSION**

Date:  August 11, 2026
Time:  10:00 am
Ctrm:  25

Pursuant to this Court's Minute Orders entered on June 22, 2026; and July 15, 2026, at ECF 112 and 122, Plaintiff Central Valley Eden Environmental Defenders ("EDEN") and Defendant Sweetener Products ("Defendant") submit this joint discovery statement related to Defendant's responses to EDEN's First, Second and Third Set of Requests for Production of Documents ("RFP1", "RFP2", "RFP3") [ECF No. 81-82] and First Set of Requests for Admission ("RFA1") [ECF No. 34, 41, 44, 67].  Per ECF 112, the disagreement related to RFP3 is included, although no associated Motion was filed.  On July 9, 2026, EDEN withdrew its Motions to Compel further responses by Defendant to EDEN's First and Second Set of Interrogatories to Defendant.  [ECF Nos. 83-84/ECF ]

Counsel for the parties met and conferred by videoconference and telephone extensively regarding the discovery disputes on April 8, 2026; June 17, 2026; June 18, 2026; June 22, 2026; and

JOINT STATEMENT RE: MOTION TO COMPEL RFP/ RFA1  – Page 1

June 29, 2026; and exchanged numerous emails as well.  The conferences were productive, resulting in Defendant's service of amended responses addressing some of the deficiencies noted by EDEN. EDEN's counsel emailed EDEN's portion of the brief to Defendant's counsel on July 10, 2026. Defendant did not provide their portion of the Statement until 4 pm on July 17, 2026.

Defendant's most recent amended responses to EDEN's RFP1, 2 and 3 are attached hereto as Exhibits A, B and C.  Defendant's privilege logs are attached as Exhibit D.  Defendant's response to RFA1 is attached as Exhibit E.

### Summary of Discovery Issues

Before filing suit, EDEN retained licensed Qualified Industrial Stormwater Practitioners as Rule 26(b)(4)(D) experts to investigate Defendant's facility. That investigation confirmed multiple ongoing General Permit violations. Despite three separate conferences between counsel and repeated settlement offers from EDEN, Defendant declined to settle. Instead, Defendant's counsel threatened litigation, vowing to pursue all available remedies against EDEN if suit were filed and claimed that Defendant maintained 100% compliance with the General Permit.  Rather than defend on the merits, Defendant has chosen to attack and disparage EDEN and its members, deploying dilatory tactics that obstruct EDEN's access to evidence and serve only to prolong this litigation.  Defendant's litigation strategy is bankrolled by a $2 million insurance policy that fully indemnifies its fees and costs. EDEN has no such protection and must shoulder every expense.

Defendant and its counsel have responded to EDEN's discovery requests in bad faith, engaging in repeated discovery abuses that have obstructed EDEN's access to admissible evidence. Communications between Defendant and its environmental consultants, NES Environmental Health & Safety ("NES") and GSI Environmental ("GSI"), contain the bulk of the evidence of Defendant's ongoing General Permit violations. Defendant has either withheld these communications entirely or produced them in fully redacted form, offering no substantiated privilege claims.  Even worse, Defendant's counsel appears to have tampered with evidence relating to production of communications between Defendant and its environmental consultants.

Specifically, Request Nos 8-11 in RFP1 served on May 29, 2025, seek relevant documents related to Defendant's environmental consultants and contractors.  Defendant did not produce

responsive documents with its original response served on June 30, 2025, other than documents publicly available on SMARTS and form emails that have no substance. Defendant's supplemental responses served on July 22, 2025, and October 8, 2025, reference bates-stamped documents allegedly produced in response to RFP1 Requests 8-11; however, many of the referenced documents are unresponsive and the remainder are "blast" emails sent from NES to its stormwater clients re: training and sampling events.

On September 25, 2025, EDEN served Defendant's counsel with a Notice of Subpoena, attaching copies of ten Rule 45 documents subpoenas directed to Defendant's consultants and contractors, including NES.  The subpoenas were served on the responding parties on September 26, 2025, with a document production due date of October 10, 2025, at 10:00 am.  None of the responding parties fully complied with the subpoenas.  Neither Defendant, nor any of the ten responding parties, served objections to the subpoenas or filed motions to quash.  EDEN's counsel did not receive any communication from Defendant's counsel, the responding parties or any individual purporting to represent the responding parties prior to the production deadline.

EDEN's counsel began contacting the responding parties and received documents from several of the responding parties, including NES.  Upon review of the documents produced by NES, it was immediately apparent that the production was incomplete and included only "cherry picked" documents that benefitted Defendant.  After EDEN's counsel communicated to NES' principals that EDEN intended to seek an Order compelling production, for contempt, sanctions and seizure of ESI, NES hired Sacramento law firm Palmer Kazanjian to represent them in the discovery dispute.  On October 16, 2025, attorney Amber Rasmussen of Palmer Kazanjian provided EDEN's counsel with a second document production from NES.  NES' supplemental document production, while still incomplete, contained many emails and documents that were neither produced by Defendant in response to Request Nos. 8-11, nor included in NES' first document production.  Notably, the second production included emails confirming that Defendant's counsel Megan Meadows emailed Jessica Stacy of NES on September 25, 2025, to inform her that EDEN would be serving NES with a document subpoena and to request that NES provide responsive documents to Defendant's counsel for review prior to the production due date.  Emails now in EDEN's counsel's possession also confirm

JOINT STATEMENT RE: MOTION TO COMPEL RFP/ RFA1  – Page 3

that Defendant's counsel Megan Meadows and Demetria Mantalis both intercepted the NES documents subpoenaed by EDEN and reviewed them prior to the date and time that the documents were first produced by NES to EDEN at 1 pm on October 10, 2025; and did so without any notice to EDEN or claim of privilege.  Documents from the Palmer Kazanjian firm's second NES production show that Defendant, its counsel, and its consultants knew of multiple General Permit violations at the exact time counsel threatened litigation against EDEN and claimed full compliance. These emails reveal a pattern of concealment confirming the violations alleged in EDEN's Complaint.

NES has been Defendant's environmental consultant since at least 2017 and has continuously contracted with Defendant to assist with and coordinate all aspects of General Permit compliance at the Sweetener Products' facility.  Likewise, GSI was hired in September 2025 as a second environmental consultant and has since continuously overseen Defendant's General Permit compliance.

Specifically, GSI has inspected Defendant's facility on several occasions for compliance; has assisted in conducting a facility drainage study to resolve disputed storm water flow, drainage and underground stormwater conveyance connectivity issues[1]; has overseen facility storm water monitoring and reporting; and has prepared Storm Water Pollution Prevention Plans (SWPPPs) and Site Maps, all of which are required by the General Permit as ongoing compliance tasks unrelated to this litigation.  Water Board records and other admissible evidence confirm that both NES and GSI are officially linked to Defendant's SMARTS account as Defendant's retained environmental consultants and authorized data entry persons for General Permit compliance, including submission of compliance documents to SMARTS that are required regardless of this litigation.

EDEN submits that a court order permitting direct forensic access to Defendant's servers and electronically stored information is the only means of obtaining all relevant communications between Defendant and its consultants.  EDEN further requests that any documents relevant to Defendant's consultants over which Defendant claims a privilege be produced to this Court for an *in camera* review to confirm whether Defendant's privilege objections are valid.

---

[1] Defendant and its counsel have been particularly resistant to producing the results of a drainage study conducted by GSI in conjunction with Defendant's employees.  Although the settlement stay was continued in February 2026 to allow Defendant to conduct the drainage study to resolve disputed issue, Defendant and its counsel have refused to provide the drainage study technical report to EDEN and instead demanded that EDEN resolve the disputed issues without the study.

JOINT STATEMENT RE: MOTION TO COMPEL RFP/ RFA1  – Page 4

The requested communications between Defendant and its consultants are essential to EDEN's preparation for the depositions of Defendant's consultants and employees responsible for General Permit compliance. Defendant's refusal to produce them—and its counsel's tampering with the evidence—has severely impaired EDEN's ability to conduct meaningful discovery.  Should the Court so request, EDEN will file a supplemental brief detailing and evidencing the discovery abuses of Defendant and its counsel.

### A. Discovery Dispute re: Defendant's Responses to Plaintiff's RFP1, 2 and 3

RFP1 contains Requests Nos. 1-69; RFP2 contains Request Nos. 70-87; and RFP3 contains Request Nos. 88-153.

### ISSUE #1: Failure to Produce Documents

Defendant failed to produce any documents with respect to the following Requests:  **RFP1**: 61-63: **RFP2**: 71-87; **RFP3**: 95-106, 109-120, 123-124, 126-129, 132-153.

**RFP1**:  Defendant indicated it would produce documents responsive to Request Nos. 61-63 but to date has not produced the documents.

**RFP2**:  To date, Defendant has produced only documents responsive to Request No. 70. Defendant's responses to Request Nos. 71-87 contain invalid and boilerplate objections and indicate: "*Defendant is conducting a diligent search of its records and will produce any responsive documents it locates*."  Request Nos. 71-74 request communications between Defendant and government agencies; Request Nos. 75-87 request communications between Defendant and its consultants and contractors.  All are highly relevant to the disputed issues in this matter.

**RFP3**:  Defendant did not produce any documents for Request Nos. 95-106, 109-120, 123-124, 126-129, 132-153.  Instead, Defendant responded:  "*To the best of Defendant's belief, all responsive documents have been produced.*"  Based on EDEN's review of publicly available documents and discovery obtained to date, Defendant has not in fact produced all responsive documents in its possession, custody and control.

### ISSUE #2: Failure to Produce All Documents/Redacting Documents

Defendant has failed to produce all documents in its possession, custody and control with respect to **RFP3** Request Nos. 88-91.  Request Nos. 88-89 relate to communications between

Defendant and its environmental consultant NES.  Request Nos. 90-91 relate to communications between Defendant and GSI.

Regarding Request Nos. 88-89, Defendant produced non-responsive documents (emails between NES and Defendant's counsel's office regarding scheduling conferences) and routine, form emails, as well as documents available on the SMARTS system.  EDEN is generally aware of many additional communications in the relevant time period between Defendant and NES which have not been produced.

Defendant objected to Request Nos. 90-91 based on attorney-client privilege and work product doctrine and produced a privilege log and redacted emails.

EDEN disputes Defendant's characterization of the requested communications as privileged. NES has been Defendant's retained environmental consultant since at least 2017, and continues to be one of Defendant's consultants.  GSI has been Defendant's retained consultant since at least September 1, 2025, continuing to the present.  Both NES and GSI have been involved during the relevant period in drafting compliance documents such as SWPPPs and Site Maps and are percipient witnesses to disputed issues relating to facts underlying Defendant's continuing violations of the General Permit and CWA.

EDEN can discover documents related to NES and GSI which were created for or served both a business/compliance role and a legal purpose, as well as all documents related to any individuals from NES or GSI who have a dual role as both a percipient and an expert witness.  *In re Grand Jury,* 23 F.4th 1088 (9th  Cir. 2021)  Documents and data gathered to maintain environmental permit compliance are required regardless of pending litigation and must be disclosed.  See *In re Grand Jury Subpoena (Mark Torf)*, 357 F.3d 900 (9th Cir. 2004).

Further, no attorney-client relationship exists between any individual employed by NES or GSI, who Defendant's counsel does not represent. Blanket assertions of privilege over dual-role witnesses have been rejected.  See *Burlington Northern & Santa Fe Railroad Co. v U.S. District Court for the District of Montana*, 403 F.3d 1114 (9th Cir. 2005).  In *Greer v. County of San Diego*, 143 F.4th 1022 (9th Cir. 2025), the Ninth Circuit reaffirmed that district courts must reject tactical efforts to immunize ordinary operational investigations and data from disclosure simply because an attorney

directed the process.  Defendant cannot insulate factual data regarding the facility's ongoing requirement to comply with the General Permit by routing its consultants' work through its counsel's office. Defendant cannot shield these witnesses with boilerplate objections and unsubstantiated claims of privilege which do not comply with controlling Ninth Circuit law.

EDEN requests an Order requiring Defendant to produce to this Court all documents responsive to Request Nos. 88-91 listed on the privilege logs attached as Exhibit D hereto for an *in camera* review to determine whether Defendant's claims of privilege are warranted.

### ISSUE #3: Failure to Identify Documents Allegedly Produced

**RFP3**:  Defendant responded to Request Nos. 95-106, 109-120, 123-124, 126-129, 132-153 that it has previously produced responsive documents but failed to identify the exact documents (by Bates Stamp) that were allegedly produced.

Request Nos. 95 through 153 request documents that Defendant relied on in preparing and certifying as true and correct General Permit compliance documents submitted to the Water Board and public through the SMARTS system during the relevant time period.  EDEN needs to know which documents Defendant relied on in preparing each specific compliance document.  RFP3 included language for each of these requests: "In YOUR written response…, YOU must provide the exact Bates-Stamped page numbers which are being produced".   Defendant failed to do so.

### ISSUE #4: Failure to Indicate whether responsive documents have been withheld

FRCP 34(b)(2)(C) provides that where objections are included in a response, the responding party must state whether any responsive documents have been withheld.  Defendant failed to so indicate for the following Requests: **RFP1**: Request Nos. 1-69; **RFP2**: Request Nos. 70-87; **RFP3**: Request Nos. 88-153.

**B.  Discovery Dispute re: Defendant's Responses to Plaintiff's RFA1**

### RFA ISSUE #1: Evasive and Non-Responsive Admissions

Defendant's Responses contain evasive and non-responsive admissions.

**Examples**:

**Request No. 5**:  Admit that all information on Exhibit 1 is true and correct.

JOINT STATEMENT RE: MOTION TO COMPEL RFP/ RFA1  – Page 7

**Response to Request No. 5**:  *Defendant admits it submitted and certified Exhibit 1 as true and correct to the best of its knowledge and belief, pursuant to the requirements and standards of the Permit.*

**Request No. 119**:  Admit that all information contained in Exhibit 5 was true and correct between December 14, 2018, and December 27, 2022.

**Response to Request No. 119**:  *Defendant admits it submitted and certified Exhibit 5 as true and correct to the best of its knowledge and belief, pursuant to the requirements and standards of the Permit.*

Defendant's responses to Request Nos. 5 and 119 are evasive as to whether the information on Exhibits 1 and 5 (documents submitted by Defendant to SMARTS along with a certification that they were true and correct) are or were in fact true and correct.

**Request No. 14**:  Admit that storm water discharges from YOUR FACILITY enter the City of Lodi's municipal storm water system (MS4).

**Response to Request No. 14**:  *Defendant admits its onsite storm drain inlets indirectly discharge to the City of Lodi's storm drain system.*

Defendant's response is evasive as to whether storm water discharges from its facility enter the City of Lodi's MS4 system.

**Request No. 74**:  Admit that since at least September 1, 2019, pesticides have been present at YOUR FACILITY.

**Response to Request No. 74**:  *Defendant denies pesticides are applied.  Defendant admits that a company comes onsite and maintains covered bait boxes.*

Defendant's response is evasive as to whether pesticides are or have been <u>present</u> at Defendant's facility.

**<u>All Applicable Request Nos.</u>:**

3-5, 6, 11-14, 35-37, 50, 61, 63, 74, 76, 79, 81, 83, 85, 87, 95, 97, 99, 101-102, 108, 114-120, 140-145, 165-170, 190-193, 216-218, 240-242, 266-268, 289-291, 315-318, 334-336, 339-342, 345-348, 351-354, 364-366, 396

**<u>RFA ISSUE #2 – Inaccurate Denials</u>**

Defendant's Responses contain unqualified denials to Requests that should be admitted by Defendant, as the truth of the matters requested can be objectively confirmed by documents Defendant

JOINT STATEMENT RE: MOTION TO COMPEL RFP/ RFA1  – Page 8

certified as true and correct and submitted to SMARTS, Defendant's written responses to Plaintiff's discovery requests, Defendant's Initial Disclosures, public records or other verified independent bases. Plaintiff puts Defendant and the Court on notice of its intent to seek sanctions pursuant to Rule 37 for all applicable denials, as it will be necessary for Plaintiff to confirm these facts through third-party subpoenas and depositions of Defendant's employees and third parties.

Examples:

**Request No. 10**:  Admit that YOU manufacture sugar products and sugar substitutes.

**Response to Request No. 10**:  Deny.

**Request for Admission No. 16**:  Admit that YOUR regular business operating hours are Monday through Friday, 2:30 am to 6:30 pm.

**Response to Request No. 16**:  Deny.

**Request No. 378**:  Admit that YOUR FACILITY did not maintain regular business operating hours on Sunday, September 1, 2019.

**Response to Request No. 378**:  Deny.

**Request No. 398**:  Admit that YOUR FACILITY did not maintain regular business operating hours on Sunday, December 8, 2019.

**Response to Request No. 398**:  Deny.

Issue:  Defendant's current SWPPP certified and submitted to SMARTS on November 12, 2024, Defendant's website and verified information available on the internet confirm that Defendant manufactures sugar and sugar substitutes and that its hours of business operation are Monday through Friday, 2:30 am to 6:30 pm.

**Request No. 405**:  Admit that Drain Inlet 11 ("D11") was the only location observed during the VISUAL INSPECTION YOU allege was conducted at YOUR FACILITY on January 3, 2020.

**Response to Request No. 405**: Deny.

Issue:  Visual Inspection records provided to Plaintiff in Defendant's Initial Disclosures confirmed that Drain Inlet 11 was the only location observed during the visual inspection conducted on January 3, 2020.   Many other similar Requests were also denied.

**Request No. 410**:  Admit that YOU did not prepare a written record of any VISUAL OBSERVATION conducted during the month of February 2020.

JOINT STATEMENT RE: MOTION TO COMPEL RFP/ RFA1  – Page 9

**Response to Request No. 419**: Deny.

Issue:  Defendant produced to Plaintiff all Visual Inspection records completed and maintained by Defendant between September 2019 and September 2024.   A visual observation record for the month of February 2020 has not been produced to date.  There are multiple other similar requests and responses.

**Request No. 547**: Admit that YOUR written response of "No" on Exhibit 43 under the "Drainage Area Observations" section to the question of whether Industrial Pollutants were observed at YOUR FACILITY on August 24, 2022, was false.

**Response to Request No. 547**:  Deny.

**Request No. 548**:  Admit that YOUR written response of "No" on Exhibit 43 under the "Non-Storm Water Discharges" section to the question of whether any unauthorized Non-Storm Water Discharges ("NSWDs") were observed at YOUR FACILITY on August 24, 2022, was false.

**Response to Request No. 548**:  Deny.

**Request No. 549**:  Admit that YOUR written response on Exhibit 43 that corrective action was implemented by YOU on August 12, 2022, to correct the sugar track-out from exiting trucks observed by YOU on August 24, 2022, was false.

**Response to Request No. 549**:  Deny.

Issue: Defendant has admitted that  Exhibit 43 (a visual observation record of a visual observation conducted by Defendant on August 24, 2022) was genuine.  Defendant also admitted that one of its employees observed on August 24, 2022, tracking of industrial materials, including sugar track-out (pollutants, which also constitute non-stormwater discharges).  Defendant indicated on the same record that it had corrected the issue of industrial material track-out on August 12, 2022, twelve days before the track-out was observed, making the recorded corrective action a theoretical impossibility on its face.  There are other similar requests and responses.

**All Applicable Request Nos.**:  10, 15-16, 49, 51-53, 60, 64, 73-74, 100, 103-104, 110-111, 121-137, 146-162, 171-188, 194-213, 219-229, 231-237, 243-263, 269-278, 281-286, 292-302, 304-312, 318-330, 359-361, 371, 376-378, 383, 388, 393-395, 396, 398-400, 405-406, 409-410, 412-424, 429, 434, 439-440, 445-446, 451-452, 457, 462-463, 468, 473, 478, 483, 488, 493, 498, 503-504, 509, 514, 519, 524, 529, 534, 539, 544-545, 547-549, 554, 557-559, 564, 566, 573, 575, 580, 582, 589, 595, 601, 608, 614, 620, 626, 632, 638, 644, 650, 656, 662-664, 669, 671-672, 677, 679-680, 685, 691, 697, 706, 708, 710-711, 716, 718-731

JOINT STATEMENT RE: MOTION TO COMPEL RFP/ RFA1  – Page 10

## RFA ISSUE #3: Invalid Objections

Defendant's Responses contain invalid objections to the definitions included in Plaintiff's Requests to which Defendant's responses are subjectively provided.

**3.A: Example re Objection to the Definition of the term "FACILITY":**

**Request No. 6**: Admit that the total size of YOUR FACILITY is 12 acres.

**Response to Request No. 6**: Defendant objects to the term Facility as overbroad, and that as defined, *includes land, buildings and structures at the 1150 Thurman Road location that are not regulated by the Permit.*

**Issue with Defendant's objection to definition of "FACILITY"**: Defendant must either admit or deny each applicable Request utilizing the term "FACILITY" **as defined by Plaintiff** in Plaintiff's Requests for Admission  (e.g. "Defendant admits/denies that the total size of its FACILITY is 12 acres, as the term "FACILITY" is defined by Plaintiff") and remove the invalid objection. Defendant's Response to Plaintiff's Requests for Admission is not the correct forum to argue either interpretation of the plain language of the General Permit or application of the provisions of the General Permit to the facts of this case, which is wholly within the purview of expert opinion. Furthermore, Plaintiff disputes Defendant's arbitrary and unfounded interpretation of the General Permit.  [Applicable to nearly all Requests]

**3.B: Example re Objection to the term "FALSE"**

**Request No.  7**: Admit that the statement in the document attached hereto as Exhibit 1 indicating that the industrial area exposed to storm water at YOUR FACILITY is 1 acre, is false.

**Response to Request No. 7**: Defendant objects to the use of the term "false" as implying inaccurate information was provided intentionally.

**Issue with objection**:  The term "false" objectively means "untrue or "contrary to fact".   Defendant's subjective intent is not relevant to these requests.

**All Applicable Request Nos.:**  7, 130-134, 136-137, 148, 156-162, 171-172, 179-188, 194, 203-213, 359

**3.C: Example re Objection to the Definition of "INDUSTRIAL ACTIVITIES":**

**Request No. 11**: Admit that YOU conduct INDUSTRIAL ACTIVITIES at YOUR FACILITY.

JOINT STATEMENT RE: MOTION TO COMPEL RFP/ RFA1  – Page 11

**Response to Request for Admission No. 11**:  Defendant objects to the definition of Industrial Activities as overbroad and vague.  Defendant objects that the definition as written describes the types of action or work that does not accurately describe the type of activity that is regulated by the Permit. **Issue with objection**:   Plaintiff included in its Request a very specific definition for the term "INDUSTRIAL ACTIVITIES".  It is not vague.  It cannot be construed as "overbroad" because it is Plaintiff's definition of a phrase that does not have a commonly understood meaning which was provided by Plaintiff to allow Defendant to accurately admit or deny the Request **as framed by Plaintiff**.

 **All Applicable Request Nos**.:   11-13, 124-125, 130-136, 150-151, 156-160, 162, 174, 179-185, 197-198, 203-209, 213, 361-362

 **Objection to Minute Order, ECF 112**

EDEN objects to this Court's Minute Order at ECF 112 and preserves this issue for appeal. The space limitations set forth in ECF 112 do not allow for compliance with LR 251(c).  EDEN was afforded only 12.5 pages to argue its position on Defendant's deficient and evasive responses to nearly 600 RFAs and more than 100 RFPs and has only provided a summary. EDEN is unable to reproduce the text of each Request in RFP1-3/RFA1, along with Defendant's responses and the parties' respective positions because of the limitation.  EDEN lacks the space to include complete legal arguments and has by virtue of the limitation, been forced to waive many discovery disputes.

The Order also requires the parties to redraft the briefing on RFA1, which was filed on October 14, 2025, before the order staying this case was entered on October 28, 2025.  [See ECF Nos. 34, 41, 44, 54, 62 and 67]

EDEN will provide supplemental briefing as requested by the Court.

<strong>CONCLUSION</strong>

EDEN respectfully requests this Court Order Defendant to serve supplemental responses to EDEN's RFP1, RFP2, RFP3 and RFA1 to rectify the deficiencies set forth above; to produce all non-privileged documents in its possession, custody and control responsive to all requests in RFP1, RFP2 and RFP3, to provide all documents listed on the privilege log attached as Exhibit D to the Court for an *in camera* review to determine the legitimacy of Defendant's claims of privilege; and to enter an

order allowing for EDEN to retain a forensic specialist to obtain all non-privileged ESI from Defendant related to communications with NES and GSI.

EDEN also requests appropriate monetary sanctions payable by Defendant and/or its counsel to EDEN, pursuant to Federal Rules of Civil Procedure 36(a)(4), 36(a)(6), 37(a)(3)(B), 37(a)(4), 37(a)(6)(A) and 37(c)(2), and other applicable Rules.

Dated:  July 17, 2026                                    Respectfully,


                                                        By:  __/s/ Adam D. Brumm_____
                                                                    Adam D. Brumm
                                                                    Attorney for Plaintiff


**DEFENDANT'S POSITION**

## I.      <u>INTRODUCTION</u>

This is not a typical Clean Water Act citizen-suit enforcement action.  Plaintiff alleges "multiple" ongoing violations but has not conducted basic discovery to test those claims. It has not visited the site, agreed to let qualified consultants confer, nor has it deposed Defendant's employees, deposed any third party or regulator, or deposed Defendant's compliance consultants. In other words, rather than conduct normal discovery, Plaintiff seeks a smoking gun, going so far as to demand "a court order permitting direct forensic access to Defendant's *servers* and electronically stored information." Joint Statement ("Jt. Stmnt."), p. 5:1-3 (emphasis added.)  Plaintiff has even accused defense counsel of tampering with evidence.  Jt. Stmnt., pp. 2:25-26; 5:8-9.

This behavior abuses the discovery process.  Plaintiff has received hundreds of discovery responses and hundreds pages of documents from Defendant.  But because these do not support Plaintiff's theories, Plaintiff speculates that the "bulk" of evidence must be hidden.  Jt. Stmnt., p. 2:21-23.  <u>No evidence supports Plaintiff's speculation.</u>  Plaintiff also lacks legal support for most of its many complaints about Defendant's objections, phrasing, and productions.  Plaintiff has both complained that Defendant did not produce enough documents and simultaneously complained that when responding to demands for "all" documents, Defendant provided too many.  Plaintiff asks the

Court to conduct a series of mini-trials on the evidence to order Defendant to change responses to Requests for Admissions from denials to admissions.

The Court has already admonished Plaintiff to stop accusing Defendant and its counsel of abusing the legal process. Dkt. 111, at p. 7:20-21. Yet Plaintiff's pattern continues. Plaintiff insinuates that Defendant or its counsel prevented "contractors" (such as companies conducting pest control, supplying fire sprinklers, a local trucking company, and engineering companies) from producing records. Jt. Stmnt., p. 4:5-7. Unsurprisingly, Plaintiff offers no proof of such prevention or that any third party withheld documents as a result.

Sometimes, it is helpful to understand a party's motivations and, here, the Joint Statement offers insight for these motions to compel: the "drainage study." Jt. Stmnt., p. 4:17-22 and fn. 1. During settlement discussions, defense counsel suggested to attorney Craig Brandt, representing Plaintiff, that she was considering having Defendant's environmental consultant, GSI Environmental, perform a study at Defendant's facility to resolve three issues: (1) whether Defendant's facility had an unidentified discharge point; (2) whether a drain under a cooling tower connected to the sewer or storm sewer system; and (3) whether the facility had an unmapped underground storm sewer connection as suggested on an old construction document. Novak Declaration ("Decl."), ¶¶ 11-13. Counsel ultimately decided a drainage study was not necessary and advised Mr. Brandt. *Id.*

For months, Plaintiff has fixated on a drainage study that does not exist. On August 14, 2026, Defendant will likely designate Tim Simpson from GSI Environmental as its expert, as Plaintiff is aware. At that time, Plaintiff is welcome to depose Mr. Simpson and ask questions about the work he did or not did not perform. Plaintiff can confirm that this is not a conspiracy to hide a damaging study. There is no drainage study. Novak Decl., ¶¶ 13-14. And the discharge allegations that make up the core of Plaintiff's case could be easily resolved if only Plaintiff had interest in seeking the truth and conducted the ordinary steps of talking to witnesses and performing a site inspection.

Finally, Plaintiff claims that it cannot identify the discovery it seeks to compel and is only providing the Court with a representative sample. Plaintiff has the burden to demonstrate that any

order to compel is warranted and for which allegedly deficient responses. Because it cannot, the Court should deny the motions to compel.

## II. RESPONSE TO PLAINTIFF'S ISSUES ON REQUEST FOR PRODUCTION

### A. DEFENDANT HAS PRODUCED ALL DOCUMENTS IN ITS POSSESSION, CUSTODY OR CONTROL

Plaintiff's dispute falls into two main categories.  First, where Defendant stated that it would produce any responsive documents, Plaintiff assumes that Defendant is withholding additional documents. Jt. Stmnt., p. 5:19-20.  Second, where Defendant stated that it had conducted a diligent and reasonable search and produced all responsive documents, Plaintiff simply does not believe it.  Jt. Stmnt., pp. 5:28-6:3.

Plaintiff alleges that Defendant has not produced documents in response to:

**RFP1**: 61-63 and **RFP2**: 71-87.  As Plaintiff notes above, they have served 153 document requests to Defendant. Defendant conducted reasonable searches for responsive documents and can provide declarations to this point. Plaintiff's Requests 71-74 seek communications with local, state and federal government agencies. In addition to producing responsive documents, Defendant noted that government documents are equally available to Plaintiff.  Plaintiff offers no legal support to argue that if Plaintiff puts a matter at issue, Defendant must request publicly available documents for Plaintiff.  Requests 75-87 request communications between Defendant and its consultants and contractors. Defendant turned over the relevant non-privileged documents in its possession, custody or control. Defendant will produce additional documents after expert disclosures.  As this matter progresses, Defendant will continue to supplement productions.

**RFP3**: 95-106, 109-120, 123-124, 126-129, 132-153.  Defendant has produced all documents in its possession, custody or control for these requests.

However, Plaintiff seems to believe that its requests imposed a duty upon Defendant to go out into the world to seek responsive documents.  Not so. Ninth Circuit law acknowledges that sometimes parties simply do not have documents, what is relevant is whether the search was diligent.  A

JOINT STATEMENT RE: MOTION TO COMPEL RFP/ RFA1  – Page 15

responding party must produce all responsive documents in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). This "control" can, in limited circumstances, extend to producing documents kept by a non-party if the party has a legal right to the document or has control over the entity who is in possession of the document." *Soto v. City of Concord*, 162 F.R.D. 603, 618 (N.D. Cal. 1995). "Control" could include situations where a parent/subsidiary relationship exists, have a close business relationship, or where a party has a contractual right to obtain records on demand. *Id.; Gerling Int'l Ins. Co. v. Commissioner,* 839 F.2d 131, 140 (3rd Cir. 1988); *In re Citric Acid Litig.*, 191 F.3d 1090, 1107-08 (9th Cir. 1999). But this level of control does not exist where the third-party in question is a subcontractor with an old or tenuous relationship to the party. *See Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993).  To the extent that Plaintiff seeks documents from Defendant relating to work performed years ago, or where Defendant had a limited relationship with the contractor, it is understandable both that Defendant would not retain the documents nor be in a position to demand them.  The requesting party bears the burden to show that the responding party has control over documents held by a non-party. *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989).

Finally, Plaintiff obtained documents from third-party subpoenas that Defendant did not have, or for which it asserted a privilege.  Defendant obtained these documents from Plaintiff.  Any court order would simply ask Defendant to assert control over those third-parties, obtain the documents, and produce documents to Plaintiff that it must already have from its subpoenas.  That request and result exceed any reasonableness in the discovery process.  Defendant produced what non-privileged documents it had. The fact that Plaintiff obtained more documents from third parties through subpoena does not warrant a motion to compel.

B.    DEFENDANT IDENTIFIED AND WITHHELD PRIVILEGED DOCUMENTS AND PROVIDED PLAINTIFF WITH A PRIVILEGE LOG

**RFP3** Request Nos. 88-91. Request numbers 88-89 relate to communications between Defendant and Defendant's environmental consultant NES. Request numbers 90-91 relate to communications between Defendant and GSI.

Defendant reviewed and properly withheld documents protected by either the attorney-client privilege where Sweetener Products employees were themselves included in a communication, or by the work product doctrine where Defendant was seeking or providing information related to create. The Court may review Defendant's privilege log to determine whether a privilege exists.

First, GSI Environmental was retained by Defendant *after* this litigation filed, specifically to evaluate Plaintiff's allegations and in anticipation of serving as expert witnesses.  Novak Decl., ¶ 4. Separately, GSI performed some compliance-related work.  Documents pertaining to that work have been produced.  Plaintiff, however, seeks **all** correspondence, all of GSI's documents, and information that otherwise falls within work protected by attorney-client privilege, settlement evaluation, and/or attorney work product.  Plaintiff will be entitled to examine GSI's work product and attorney-client related documents should Defendant designate GSI as its testifying litigation expert.  Nor will Plaintiff have to wait long; under the Scheduling Order, the parties are to designate expert witnesses on August 14, 2026.

Second, NES was retained by Defendant pre-litigation and assisted with the facility's compliance for years.  Therefore, Defendant turned over documents pertaining to NES's work. However, precisely because NES held long-standing knowledge, once Plaintiff threatened litigation, defense counsel obtained information from NES to assist with the defense.  This included discussions to learn about NES's observations, reporting, documentation, and compliance advice.  Novak Decl., ¶ 3.  A party may not discover documents prepared in anticipation of litigation or for trial (including by the other party's consultant).  Fed. R. Civ. P. 26(b)(3)(A).  Plaintiff incorrectly argues that if a document could have a "dual purpose," no privilege attaches.  This argument runs contrary to the holding in *United States v. Nobles,* where the Supreme Court noted that "attorneys often must rely on

JOINT STATEMENT RE: MOTION TO COMPEL RFP/ RFA1  – Page 17

the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the [work product] doctrine protect material prepared by agents for the attorney." *United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (clarification added).

Plaintiff's cases do not contradict this general rule or transform litigation-related work into discoverable evidence. Indeed, the cases support Defendant's ability to claim the privileges. For example, in *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900 (9th Cir. 2004) which Plaintiff uses to argue that no privilege exists for "dual purpose" documents, the Ninth Circuit determined that where a litigation purpose "permeated" documents, they were properly withheld. *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 909-10 (9th Cir. 2004).

Where a privilege applies, a party is allowed to withhold documents and identify them on a privilege log. Privilege logs must describe the withheld evidence clearly enough for a court or opposing parties to challenge or confirm the privilege. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005). Defendant's privilege log meets that test. It shows that counsel for Defendant was communicating with NES, GSI and employees of Sweetener Products in response to Eden's Notice of Intent to Sue and in response to this lawsuit. Those documents are plainly protected from disclosure in discovery under the attorney-client privilege and/or work product doctrines. Non-privileged documents were already produced.

Defendant has produced a privilege log identifying all documents withheld on the basis of privilege. To the extent Plaintiff asserts Defendant's responses do not expressly comply with Rule 34(b)(2)(C), Defendant is willing to supplement its written responses to state that, other than the documents identified in the privilege log, no responsive documents have been withheld. Jt. Stmnt., pp. 7:25–8:2.

C.    DEFENDANT HAS IDENTIFIED ADDITIONAL DOCUMENTS AND PROVIDED SUPPLEMENTAL PRODUCTIONS TO PLAINTIFF

**RFP3**: Plaintiff alleges that defendant provided no documents in response to Request numbers 95-106, 109-120, 123-124, 126-129, 132-153. Defendant disagrees, as it had already produced all

responsive non-privileged documents in response to Plaintiff's multiple other requests. If needed, Defendant will restate the bates numbering for the duplicative requests.

As it did above, Plaintiff argues that if it found more documents through public databases or third parties than Defendant produced, it must mean that Defendant is withholding documents. One does not follow from the other. It is entirely possible (and reasonable) for a consultant to have documents that its client does not. It is entirely possible that a Defendant maintains certain required documents but not all possible compliance documents. Request numbers 95-153 request documents that Defendant relied on for its compliance reporting. Defendant produced documents that it had. When further searches identified additional documents, Defendant supplemented its responses. That is how discovery works.

## III.     **RESPONSE TO PLAINTIFF'S ISSUES ON REQUEST FOR ADMISSIONS**

### A. PLAINTIFF HAS NOT ESTALBISHED ITS RIGHT TO FURTHER OR REVISED RESPONSES

On May 28, 2025, Plaintiff served Defendant over 700 Requests for Admissions, to which Defendant timely responded. Here, Plaintiff challenges over 500 of those responses, claiming (1) that Defendant's responses contain evasive and non-responsive admissions; (2) Defendant's responses contain unqualified denials; and (3) Defendant's responses contain invalid objections. Plaintiff offers no legal support for its complaints.

### B.     DEFENDANT'S RESPONSES DO NOT CONTAIN NON-RESPONSIVE OR EVASIVE ADMISSIONS

Plaintiff characterizes 85 of Defendant's admissions as evasive and non-responsive. Yet these Requests had intrinsic problems, making them difficult to respond to without adding objections and/or qualifying language. A responding party may answer a request for admission to the best of its ability while qualifying the response or admitting only part of it as appropriate. Fed. R. Civ. P

JOINT STATEMENT RE: MOTION TO COMPEL RFP/ RFA1  – Page 19

36(a)(4); Fed. R. Civ. P. 36(a)(5). This is not evasion, but instead is the exact procedure the Federal Rules expressly addresses in circumstances when, as here, a party cannot admit or deny in full.

For example, in RFA No. 14, Defendant admits that it discharges indirectly to the City of Lodi's storm drain system. Jt. Stmnt., p. 8:20-22. Defendant included the language regarding the storm drain system to clarify the point of entry for its discharges. The City of Lodi's storm drain system is the City of Lodi's MS4 system.  Thus, Defendant has admitted that it drains to the MS4 system.  Other Responses that Plaintiff argues are insufficient are stated as admissions with clarifying language. For example, Request 11 asks Defendant to admit that it conducts industrial activities. In response, Defendant objects to the definitions used by Plaintiff but admits that it conducts industrial activities. Further, Request 99 asks Defendant to admit whether it stores and/or handles certain materials and chemicals associated with welding. In response, Defendant admits to storing/handling gases, but denies the remaining allegations in the Request. On its own, Plaintiff's preference for admissions without clarifying language does not entitle it to new responses. *See Harris v. Escamilla,* 2016 WL 1224057, *4 (E.D. Cal. 2016) (holding that just because plaintiff does not like discovery response does not mean defendant must provide a new one).

C.    DEFENDANT'S RESPONSES DO NOT CONTIAN INACCURATE DENIALS

Plaintiff argues that 253 of Defendant's denials should be admissions. Plaintiff asks this Court, based upon no evidentiary foundation or facts, to order Defendant to change its denials to admissions.  There is no basis or legal support to do so. Plaintiff essentially asks the Court to conduct a mini-trial on each factual issue to determine whether the admission or denial is correct, or not.  That is not the point of motions to compel responses, nor the point of RFAs which are used to reduce issues for trial.  See *Asea v. Southern Pac. Transp. Co,* 669 F.2d 1242, 1245 (9th Cir. 1981). As an example, Plaintiff argues that Defendant should be forced to admit that it did not conduct an inspection in February 2020 because Defendant initially did not produce the record and provided it following a second search for records. Jt. Stmnt., pg. 10:9-15.  This does not mean that the denial is improper.  Failing to find an inspection report when initially searching for documents does not mean that no inspection occurred.  Plaintiff could ask the person who conducted the inspection, created the

record, could not initially found it, but later found the report. But instead of conducting this reasonable search for clarification, Plaintiff wants the Court to change hundreds of denials to admissions based upon this type of argument. This would undermine the discovery process which allows parties to identify later-discovered documents so long as they supplement their productions. Fed. R. Civ. P. 26(e)(1) (allowing mechanism for parties to supplement responses when additional or corrective information is discovered). Similarly, when asked to admit that its business hours are Monday through Friday, 2:30 am to 6:30 pm., Defendant denied the Request because those are not its operating hours. But Plaintiff wants this Court to order Defendant to change its answer. Again, Plaintiff can depose Defendant's employees about its operating hours and wants to determine which answer is correct.

Of the remaining 250 allegedly deficient responses, some repeat the same pattern as above. Jt. Stmnt., pg. 11:6-10. Seventy-seven of the Requests relate to whether Drain Inlet 11 (and for some Drain Inlet 10) was the only location or storm water area observed during inspections. Similarly, Requests 718-731 also ask Defendant to admit that it did not conduct visual inspections or create written records of months for which inspection reports were produced. (Again, this appears to related to Plaintiff's belief that there are additional drainage points.) There is no justification to ask the Court to order Defendant to say that it did not conduct inspections or how to contradict Defendant's response.

The heart of this Motion is that Plaintiff disagrees with Defendant's Responses and would prefer that they were admissions. This does not warrant having the Court determine, without evidence, these issues of fact. *See Harris, supra,* 2016 WL 1224057 at p. 4 (stating that plaintiff not liking a discovery response does not mean he is entitled to a new one).

Plaintiff also abuses the discovery process by using the Requests for Admission to seek the truth of every piece of information in numerous 30+ page documents. Many of Plaintiff's request seek not the genuineness of documents but ask Defendant to admit to the truth of every piece of information on the pages of multi-page documents. Plaintiff's approach would effectively turn even the simplest of documents into a series of hundreds of facts to admit or deny as part of one Request.

JOINT STATEMENT RE: MOTION TO COMPEL RFP/ RFA1  – Page 21

There is simply no case law imposing that duty.  Requests are appropriate to authenticate anticipated exhibits, but not to seek the truth of every piece of information in a document, as Plaintiff has attempted to do here. See *K.C.R. v. County of Los Angeles,* 2014 WL3433772, *2-3 (C.D. Cal. 2014).

         D.        DEFENDANT'S OBJECTIONS TO PLAINTIFF'S DEFINITIONS ARE VALID

Plaintiff alleges that Defendant's responses are inadequate because they object to Plaintiff's definitions. As stated above, Rule 36 requires a responding party to answer a request to the best of its ability, which can mean qualifying the response or admitting only part of it as appropriate. Fed. R. Civ. P. 36(a)(4). The Rule also expressly allows a responding party to object to a request when a reason is given. Fed. R. Civ. Proc. 36(a)(5). However, Plaintiff alleges that nearly all of Defendant's responses are deficient on this basis. Jt. Stmnt., Pg. 11: 19-27.  Specifically, Plaintiff requests that Defendant remove all objections to the terms "FACILITY," "FALSE," "INDUSTRIAL ACTIVITES," "INDUSTRIAL CHEMICALS," and "POLLUTANT."  Under the Rule, Defendant may object to the definitions used by Plaintiff when they create overbroad and vague requests. *See* Fed. R. Civ. P. 36(a)(5); see also *Drake v. Mehta,* 2025 WL 2420006, *3 (E.D. Cal. 2025) (court agreed with objections to requests for admission when the requests were vague).

For example, Plaintiff defines "FACILITY" as "all buildings and land physically located within the legal boundaries of the real property commonly known as 1150 Thurman Street in Lodi, California." This definition is an intentional misuse of a term of art. This is a Clean Water Act case that alleges violations of the general industrial storm water permit.   The Permit defines "FACILITY" as "[a] collection of industrial processes discharging storm water associated with industrial activity within the property boundary or operational unit." Permit Glossary, Attachment C, p. 3. Yet, Plaintiff has defined "facility" as including unregulated portions of the property.  This seeks information irrelevant to the action and intentionally creates confusion about what Defendant is or isn't admitting. For example, it is not a permit violation to discharge industrial storm water that does not leave the property's boundaries.  *County of Maui, Hawaii v. Hawaii Wildlife Fund,* 590 U.S. 165, 186 (2020) (requiring discharge or functional equivalent discharge to Waters of the United States for the Clean Water Act to apply).

Similarly, Plaintiff defines "INDUSTRIAL ACTIVITES" as six different activity types, including things like storing, parking all onsite trucks and vehicles. These types of activities do not fall within the industrial activities regulated by the Permit and appear intentionally designed to use innocuous activities as proof of violations. In addition, Plaintiff's definition of "INDUSTRIAL CHEMICALS" includes materials that are not subject to Permit regulation.   Defendant objected to these definitions to preserve its rights and ensure that responding to discovery does not purport to support Plaintiff's assertions of Clean Water Act jurisdiction in areas beyond its reach at the Facility. As to the term "FALSE," Plaintiff provides no definition in its Requests. "FALSE" can be defined in a multitude of ways, including "intentionally untrue," "not genuine," or "not faithful or loyal." Merriam Webster. Given that it is unclear whether Plaintiff intends "FALSE" to encompass intentionally untrue statements or any statement made that is incorrect, Defendant is entitled to object to its use and implications. Plaintiff could easily have narrowed or clarified its intended definition.  It chose not to do so.

Even where Defendant admitted certain Requests, Plaintiff still calls the admissions "inadequate." For example, Plaintiff cites to Defendant's Response in Request 11 as inadequate which admits to conducting "industrial activity as the term is defined in the Permit." Jt. Stmnt., pg. 12:10-20. This Response admits that Defendant conducts industrial activity at the Facility, while objecting to Plaintiff's attempts to overreach. Similarly, Plaintiff points to Request 6, where Defendant responded by objecting to the definition of "FACILITY" while admitting that its total size is 12 acres.  Jt. Stmnt., pg. 11:15-22. It is unclear why Plaintiff challenges a response that directly admits the fact alleged outside of displeasure with an objection to its definition. Plaintiff is not entitled to further or different responses merely because it is unhappy with the responses it currently has. *See Harris, supra,* 2016 WL 1224057 at \*4 (stating that plaintiff not liking a discovery response does not mean he is entitled to a new one). Furthermore, as the party moving to compel further responses, Plaintiff has the burden of establishing "actual and substantial prejudice" from the denial of the discovery sought. *Razo v. AT&T Mobility Services, Inc.,* 2021 WL 5589753, \*3 (E.D. Cal.

2021). Plaintiff has not provided legal support for its position, nor has it met its burden. It remains unclear what the actual and substantial prejudice Plaintiff is facing.

Objections to Plaintiff's overbroad definitions do not render Defendant's responses improper or support Plaintiff's request for the Court to order Defendant to change its answers to admit to hundreds of Requests for Admissions. *See* Fed. R. Civ. P. 36(a)(5) (specifically provides mechanism for objecting to requests for admission).

## IV.    DEFENDANT HAS THE RIGHT TO REVIEW DOCUMENTS FROM A NON-PARTY PRODUCED IN RESPONSE TO A RULE 45 SUBPOENA

Plaintiff baselessly levels accusations of evidence tampering, "intercepting" documents, and engaging in patterns of concealment.  Jt. Stmnt. pp. 2:25-26; 5:8-9. While there is not a copious amount of caselaw (which surprised the courts as well[1]), what there is on the matter makes clear that reviewing a non-party's document production for privilege and/or relevance does not come close to running afoul of either the Federal Rules of Civil Procedure or Rules of Professional Responsibility. Lawyers have multiple ethical obligations—not only to their client, but to third parties and to the Court. In *Gen. Elec. Co. v. United States,* 119 F. Supp. 3d 17 (D. Conn. 2015), the court made clear that the partying issuing the Rule 45 subpoena has "a right to receive documents that are responsive to its subpoenas, not to have a completely neutral party review and decide what documents are responsive." *Gen. Elec. Co. v. United States,* 119 F. Supp. 3d 17, at *20 (D. Conn. 2015).  Nothing in the ethical rules bars a lawyer from reviewing documents that do not belong to his or her client. ABA Model Rules of Prof. Conduct, Rule 1.3 cmt. 1.  A district court cited to *Gen. Elec. Co. v. United States* in decisively dismissing the allegation that one party working with a non-party to respond to a Rule 45 subpoena was "interfering." *Joseph v. Joseph*, No. 1:16-CV-465, 2018 WL 11432995, at *4 (S.D. Ohio June 7, 2018) Not Reported in Fed. Supp.  Here, Plaintiff appears convinced that Defendant's review of any documents from a consultant employed by Defendant was unequivocally unethical. In fact, the law is quite the opposite—"[i]f it serves the interest of a law firm's client for the law firm to review the documents of a non-party to the litigation (and who in turn is willing to have the law firm conduct this review), then this review bespeaks good lawyering rather than a cause for

complaint to the Court." *GE, supra,* 119 F.Supp.3d at *20. Plaintiff should not assume that every missed document is an intentional withholding, every act means a conspiracy or witness tampering exists, nor that every response is a lie.

## V.   **CONCLUSION**

Based on the above, Plaintiff has not established that it is entitled to further responses from Defendant. Therefore, this Court should deny Plaintiff's Motions to Compel.


Date:   July 17, 2026              LAW OFFICE OF JENNIFER F. NOVAK




                                    Jennifer F. Novak

                                    Jennifer F. Novak
                                    Attorneys for Sweetener Products, Inc.