Adam D. Brumm, Esq. SB #257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC., et al,<br><br>Defendants. | Case No.: 2:25-cv-00078-WBS-CSK<br><br>**SUPPLEMENTAL BRIEF ON PLAINTIFF'S MOTIONS TO COMPEL [67], [81], [82], [124] PER JUDGE KIM'S MINUTE ORDER [134]**<br><br>Date: August 11, 2026<br>Time: 10:00 a.m.<br>Ctrm: 25 |

Plaintiff Central Valley Eden Environmental Defenders ("EDEN") respectfully submits this Supplemental Brief detailing the discovery abuses committed by Defendant Sweetener Products' ("Defendant") counsel, attorneys Jennifer Novak, Demetria Mantalis, and Megan Meadows of the Law Office of Jennifer F. Novak (collectively "Novak") as alleged in ECF No. 124, filed July 17, 2026.

Novak has interfered with subpoenaed evidence and dissuaded a third-party from producing documents. The evidence submitted below supports a finding of bad faith discovery conduct.

## INTRODUCTION

Before EDEN filed this action, Novak insisted that Defendant was in full compliance with the General Permit and threatened to sue EDEN for attorneys' fees. Declaration of Adam D. Brumm ("Brumm Dec") ¶¶18, 35.

At the same time Novak claimed that her client was in full compliance with the General Permit, Novak also knew that there were ongoing violations at the Sweetener Products facility. One of those

violations is Defendant's failure to test its storm water runoff for Zinc, a mandatory sampling parameter that EDEN's notice letter specifically alleged. (Brumm Dec ¶¶2-14, 22-23, 38-42)

Both publicly available satellite imagery and Defendant's own Site Maps certified and submitted to SMARTS depict heavy tire tracking and extensive galvanized metal roofing at the facility—both major sources of Zinc. (Brumm Dec ¶¶5-7, 10-11) The General Permit requires testing for all onsite pollutants exposed to storm water and all sampling parameters required by the Water Board. (Brumm Dec. ¶¶ 8-9, 38-39) Zinc is an onsite pollutant exposed to storm water at Defendant's facility and is also a required sampling parameter by the Water Board. (Brumm Dec ¶¶ 2-14, 22-23, 38-42)

**A. Novak conceals evidence of Zinc testing.**

Novak orchestrated a plan with Defendant and its consultants to secretly test for Zinc while hiding the results from the Water Board and the public. On November 19, 2024, EDEN's counsel advised Novak's associate Megan Meadows during a conference call that Zinc was a receiving water impairment and that Sweetener Products was required to test for it. (Brumm Dec ¶¶ 22-23) Ms. Meadows provided no substantive response. Instead, she emailed her client and NES Environmental consultant Jessica Stacy to schedule a follow-up call for November 25, 2024, to discuss what she had learned from EDEN's counsel about the Zinc issue. (Brumm Dec ¶24)

On November 25, 2024 (a few hours after the call with Novak and Defendant), Ms. Stacy emailed BSK Laboratories requesting a Zinc-only storm water sampling bottle for Sweetener Products, with a Chain of Custody form to test for "Zinc only." (Brumm Dec ¶¶25-26; see also Bates Stamp Nos. BRUMM-078 to BRUMM-080) This appears to be Defendant's first attempt to test its storm water for Zinc—and only after EDEN identified the violation.

On December 17, 2024, Ms. Stacy emailed Sweetener Products' employee David Jones and confirmed that the Zinc sample would be treated as "only a background sample" that would not be reported to the Water Board and public through SMARTS. (Brumm Dec ¶ 30; see also Bates Stamp No. BRUMM-077) This directive is a serious violation in contravention of General Permit Section XI.B.11.a, which requires all sampling results to be submitted to SMARTS within 30 days. (Brumm Dec ¶31-32)

Meanwhile, Defendant's Annual Reports for 2023-24, 2024-25, and 2025-26 falsely certify under penalty of perjury that Defendant has assessed the facility for the presence of Zinc, and it is not there. (Brumm Dec ¶¶36-42)

**B. Novak interferes with a Rule 45 document subpoena.**

On September 25, 2025, EDEN issued a Rule 45 document subpoena to NES Environmental, with documents due by 10:00 a.m. on October 10, 2025. (Brumm Dec ¶¶46-47) Novak learned of the subpoena before it was served and intervened in the production. On September 25, 2025, at 9:57 a.m., Ms. Meadows emailed Ms. Stacy and directed her to send responsive documents to Novak for review before producing them to EDEN. Ms. Stacy agreed to provide the documents by October 8, 2025. (Brumm Dec ¶48)

On October 6, 2025, Ms. Stacy sent two zip files to Ms. Meadows containing documents she planned to produce. (Brumm Dec ¶49). On October 8, 2025, Ms. Mantalis contacted Ms. Stacy about the subpoena and scheduled a call for October 9, 2025, to discuss the document production. (Brumm Dec ¶50) On October 10, 2025, at 10:43 a.m., Ms. Stacy (presumably after speaking with Ms. Mantalis) sent a different set of documents to Novak. (Brumm Dec ¶51)

NES failed to produce any documents to EDEN by the 10:00 a.m. deadline on October 10, 2025, because Novak was still conducting a second review of the documents. (Brumm Dec ¶¶52-54)

Novak never informed EDEN that she had intercepted and reviewed files required to be produced by NES. (Brumm Dec ¶55) After EDEN threatened to file a Motion to Compel, NES produced 110 documents—66 routine emails and 44 documents already available on SMARTS or previously produced. (Brumm Dec ¶¶56-59) None of the emails about Zinc were produced. (Brumm Dec ¶¶25-30, 35, 58, 64-69)

EDEN reviewed NES' document production and determined that documents had been withheld. (Brumm Dec, ¶59) NES admitted to withholding documents. (Brumm Dec, ¶60) EDEN communicated to NES that it intended to obtain a Court order to seize NES' computers and devices and have them forensically examined to extract all responsive ESI. (Brumm Dec, ¶61, 63) NES responded by hiring an attorney from the Palmer firm who contacted EDEN's counsel. (Brumm Dec, ¶62)

On October 16, 2025, NES produced (through the Palmer firm) a second set of 510 documents—400 new documents including 331 emails never produced before. (Brumm Dec ¶¶64-69)

Novak never served an objection, privilege log, motion to quash, or any notice regarding the Rule 45 subpoena to NES. (Brumm Dec ¶¶70-73)

Among the emails produced by the Palmer firm were communications describing Defendant's scheme to secretly test for Zinc and Novak's participation in the NES subpoena interference. (Brumm Dec ¶¶25-30, 35, 46-51, 58, 64-69)

**C. Novak dissuades NES' complete document production.**

On June 30, 2025, Ms. Meadows emailed NES consultant Jessica Stacy regarding EDEN's First Set of Requests for Production and directed Ms. Stacy to produce only certain types of routine emails between NES and Sweetener, such as emails about sampling during rain and training. (Brumm Dec ¶¶44-45; see also Bates Stamp Nos. BRUMM-095 to BRUMM-098)

In response to RFP1 and 2, Defendant ultimately has produced only 10 emails between itself and NES—all routine communications. (Brumm Dec ¶45; see also Bates Stamp Nos. BRUMM-033 to BRUMM-046) This selective production directive is corrupt persuasion under 18 U.S.C. §1512(b)(2)(A).

EDEN believes there are additional documents and emails between Defendant and its consultants and counsel that confirm Defendant's ongoing General Permit violations.

**D. Novak requests settlement after EDEN discovers the interference.**

Within an hour of service of EDEN's Sixth Supplemental Disclosures on October 17, 2025—which included the 331 newly produced emails—Novak contacted EDEN's counsel requesting a settlement agreement and stay of the case. (Brumm Dec ¶74-76; see also Bates Stamp Nos. BRUMM-117 to BRUMM-120)

In addition, emails between Novak and the Water Board shortly after service of the supplemental disclosures implicate Novak in the Zinc testing scheme. (Brumm ¶¶74-78)

**E. Novak rushes to promote jurisdictional defenses while failing to produce documents.**

When settlement failed, Novak began aggressively advancing jurisdictional defenses <u>while ignoring discovery obligations that were overdue but not yet compelled</u>. Novak has repeatedly represented that depositions of EDEN's Rule 30(b)(6) witness and standing witness would result in a quick disposition of this case on jurisdictional grounds. (See Request to Reschedule, ECF No. 74 at 2 (PMK testimony "will allow Defendant to file a motion to dismiss this action for lack of subject matter jurisdiction"); Request for Reconsideration, ECF No. 108 at 2 (seeking expanded PMK deposition to challenge "associational standing").

**CONCLUSION**

Based on the evidence obtained solely from NES, via their independent counsel, EDEN concludes that only an order for forensic collection of electronically stored information from Defendant is sufficient to protect EDEN's rights to its requested discovery.

Dated: August 18, 2026

Respectfully,

By: __*/S/_Adam D. Brumm*___________
Adam D. Brumm
Attorney for Plaintiff